FILED ___ ENTERED
LODGED ___ RECEIVED

APR 1 ☐ 2012  UK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8
9

10  JOHN SCANNELL,

11        Plaintiff

12  vs.

13

14  WASHINGTON STATE BAR
    ASSOCIATION, BOARD OF GOVERNORS
15  OF WSBA, RUSSELL M. AOKII,
    MARCINE ANDERSON,  JAMES E.
16  BAKER, STANLEY A. BASTIAN, ERON
    BERG, LIZA E. BURKE, ANTHONY
17  BUTLER, BRIAN L. COMSTOCK, ELLEN
    CONEDERA DIAL, LONNIE DAVIS,
18  LOREN S. ETENGOFF,  G. GEOFFREY
    GIBBS, ANTHONY D. GIPE, LORI S.
19  HASKELL, DAVID S. HELLER, NANCY L.
    ISSERLIS, MARK A. JOHNSON, PETER J.
20  KARADEMOS, LELAND B. KERR,
    DOUGLAS C. LAWRENCE, CARLA C.
21  LEE, ROGER A. LEISHMAN,
    CATHERINE L. MOORE, SALVADOR A.
22  MUNGIA, KRISTIN OLSON, KATHLEEN
    O'SULLIVAN, PATRICK A. PALACE,
23  ERIC C. DE LOS SANTOS, MARC A.
    SILVERMAN, S. BROOKE TAYLOR,
24  STEVEN G. TOOLE, EDWARD F. SHEA,
    JR., BRENDA WILLIAMS, JASON T.
25  VAIL,

26

27

28

No.   **C12-0683** MSP

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF, AND
DAMAGES FROM RACKETEERING,
CONSPIRACY, TO ENGAGE IN A
PATTERN OF RACKETEERING
ACTIVITY AND RELATED CLAIMS
OF MALICIOUS PROSECUTION,
DEFAMATION, INTERFERENCE
WITH A BUSINESS RELATIONSHIP,
ABUSE OF PROCESS, AND DENIAL
OF CIVIL RIGHTS UNDER 42 USC
§1983, VIOLATION OF THE
SHERMAN ANTI-TRUST ACT,
PETITION FOR WRIT OF
MANDAMUS, WRIT OF
PROHIBITION**

**JURY DEMANDED**

<u>18 U.S.C. 1961</u> *et seq.*; 18 U.S.C.



12-CV-00683-CMP

**COMPLAINT - PAGE 1**

ORIGINAL

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTT BUSBY, JAMES M. DANIELSON,
JEFFERS DANIELSON SONN &
AYLWARD P.S., , BOBBE J. BRIDGE,
BARBARA A. MADSEN, SUSAN J. OWEN,
GERRY L. ALEXANDER, CHARLES W.
JOHNSON, RICHARD B. SANDERS, TOM
CHAMBERS, MARY E. FAIRHURST,
JAMES M. JOHNSON, DEBRA L.
STEPHENS,

SUSAN CARLSON, RONALD
CARPENTER, clerks of the Washington State
Supreme Court.

GAIL MCMONAGLE, LARRY KUZNETZ,
AMANDA ELIZABETH LEE, DAVID
HELLER, BRIAN ROMAS, ZACHARY
MOSNER, THOMAS CENA, JONI
MONTEZ, THOMAS ANDREWS,
TAMARA DARST, SUSAN B. MADDEN,
CLEMENTINE HOLLINGSWORTH,
WILLIAM J. CARLSON, SETH FINE,
CARRIE M. COPPINGER, HENRY (TED)
STILES, NORRIS HAZELTON, THOMAS
CENA, MICHAEL BAHN, MELINDA
ANDERSON, SHEA C. MEEHAN, NORMA
L. UREÑA, GRACE GREENWICH, ,
JAMES V. HANDMACHER RYAN
BARNES ROBERT WELDON, JULIE
SHANKLAND, FREDERICK M. MEYERS,
BRIAN ROMAS, SHEA C. MEEHAN

and JOHN & JANE DOES 1-20,

Defendants

COMPLAINT - PAGE 2

**INTRODUCTION**

**COMES NOW** the plaintiff, John Scannell who respectfully files claims against the defendants for Civil Rights violations, RICO remedies authorized by the federal statutes at 18 U.S.C. 1961 *et seq.*; mail fraud in violation of 18 U.S.C. § 1341, Sherman Antitrust Act in violation of 15 U.S.C. §1; for declaratory and injunctive relief under federal law, and related state tort claims

## I.  PARTIES, JURISDICTION, VENUE

1.  This court has jurisdiction under RCW 7.16.160, RCW 7.16.300, RCW 7.24.010, RCW 7.40.010, CR 30, and ELC 5.5,

2.  This court has venue pursuant to RCW 4.12.020. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) and 18 U.S.C. §1965(a).

3.  Venue and Jurisdiction are proper under RCW 4.12.010, RCW 4.12.020, and RCW 4.12.025. Jurisdiction is conferred on the court by virtue of 29 U.S.C §1331, §1334, §1343. Venue in this district is appropriate pursuant to Title 28, United States Code, §1391, because the pertinent events took place in this district.

4.  Plaintiff John Scannell (hereinafter referred to as "Scannell) is a resident of Kitsap County. He was an attorney for Paul King, in actions before the Washington State Bar Association.

5.The Plaintiff ha performed all conditions precedent to the maintenance of this action and is in all other respects fully qualified to maintain this action.

6.  Defendant Washington State Bar Association (hereinafter known as WSBA) is a private organization existing under the laws of the State of Washington, having its principal office and place of business located in King County, Washington, within the territorial jurisdiction this court.  For purposes of this action the WSBA is a "person."

**COMPLAINT - PAGE 3**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

7.  Defendant Scott Busby (hereinafter referred to as "Busby") is a disciplinary counsel of the Washington State Bar Association, and is named in this action in both his official and individual capacities.  Upon information and belief, he resides within the territorial jurisdiction of this court. He is named as a "RICO defendant."

8.  Defendant Gail McMonagle, (hereinafter referred to as "McMonagle), was the vice chair, chairperson and is a member of the Disciplinary Board of the Washington State Bar Association.  She is being named in both her official and individual capacity for acts committed in their supervisory and administrative capacities for acts committed in judicial, supervisory, and administrative capacities as members of the Disciplinary Board of the State of Washington.

9.  Defendant Board of Governors (hereinafter referred to as "BOG" of the Defendant WSBA is the governing body of the association, having its principal office and place of business located in King County, Washington, within the territorial jurisdiction this court.  The following defendants were at times material hereto officers and/or members of the BOG, and are named in this action in both their official and individual capacities: Russell M. Aoki, Marcine Anderson, James E. Baker, Stanley A. Bastian, Eron Berg, Liza E. Burke, Anthony Butler, Brian L. Comstock, Ellen Conedera Dial, Lonnie Davis, Loren S. Etengoff,  G. Geoffrey Gibbs, Anthony D. Gipe, Lori S. Haskell, David S. Heller, Nancy L. Isserlis, Mark A. Johnson, Peter J. Karademos, "Leland" B. Kerr, Douglas C. Lawrence, Carla C. Lee, Roger A. Leishman, Catherine L. Moore, Salvador A. Mungia, Kristin Olson, Kathleen O'Sullivan, Patrick A. Palace, Eric C. de los Santos, Marc A. Silverman, S. Brooke Taylor, Steven G. Toole, Edward F. Shea, Jr., Brenda Williams, and Jason T. Vail (hereinafter referred to as the "BOG defendants"..  Upon information and belief, most, if not all, of the acts committed by them took place within the territorial jurisdiction of this court and all of them are residents of the State of Washington. Stanley A. Bastian is named  as a "RICO defendant"

**COMPLAINT - PAGE 4**

10.   Defendant James M. Danielson "hereinafter referred to as "Danielson") and Jeffers Danielson Sonn, and Aylward P.S.(hereinafter referred to as "Danielson- Jefferson firm") are independent contractors and are being sued in that capacity and are also named in this action in both their official and individual capacities for the acts alleged herein.   Upon information and belief, most, if not all, of the acts committed by them took place within the territorial jurisdiction of this court.   Defendant Jeffers Danielson Sonn, and Aylward P.S is a law firm and is liable for the acts of Danielson, who is both a lawyer and a shareholder in that firm.   Danielson is additionally designated as a RICO defendant.

11.   Defendants Gail McMonagle, Larry Kuznetz, Amanda Elizabeth Lee, David Heller, Brian Romas, Zachary Mosner, Thomas Cena, Joni Montez, Thomas Andrews, Tamara Darst, Susan B. Madden, Clementine Hollingsworth, William J. Carlson, Seth Fine, Carrie M. Coppinger, Henry (Ted) Stiles, Norris Hazelton, Thomas Cena, Michael Bahn, Melinda Anderson, Shea C. Meehan, Norma L. Ureña, Grace Greenwich, James V. Handmacher Ryan Barnes Robert Weldon, Julie Shankland, Frederick M. Meyers, Brian Romas, Shea C. Meehan (hereinafter referred to as the "Disciplinary Board Defendants" were or are members of the Disciplinary Board of the WSBA.   They are being named in both their official and individual capacities for acts committed in their supervisory and administrative capacities for acts committed in judicial, supervisory, and administrative capacities as members of the Disciplinary Board of the State of Washington.

12.   Defendants Bobbe J. Bridge, Barbara A. Madsen, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens (hereinafter referred to as the "Supreme Court defendants") were or are justices of the Washington State Supreme Court.[1]   They are being named in both their

---

[1] Defendants Bobbe J. Bridge and Richard B. Sanders are no longer members of the court.

**COMPLAINT - PAGE 5**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

official and individual capacities for acts committed in their supervisory and administrative capacities as justices of the Washington State Supreme Court. Tom Chambers, Mary E. Fairhurst, and Barbara Madsen are additionally designated as RICO defendants. Many of the acts complained of by them took place in Thurston County, within the territorial jurisdiction of this court.

13. Susan Carlson (hereinafter referred to as Carlson", Ronald Carpenter (hereinafter referred to as Carpenter) are clerks of the Washington State Supreme Court. They are being named in both their official and individual capacities for acts committed in their supervisory and administrative capacities.

14. Defendants John Doe and Jane Doe are persons yet to be identified who may in whole or in part be liable for all or part of the claims set forth herein as may be revealed in discovery or investigation and/or who may be found to be necessary parties to this action.

15. Actions alleged took place in King County and Thurston County, Washington, within the territorial jurisdiction of this court.

16. Plaintiff Scannell alleges a violation of his rights under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and seeks relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, Title IX of the Organized Crime Control Act of 1970 as amended 18 U.S.C.§§1961 et seq. See 18 U.S.C. §§ 1964(a) and (c) ("Civil RICO").

17. This is an action for injunctive and declaratory relief pursuant to 42 U.S.C. §1883 and 28 U.S.C. §2201 against the above-named individuals in their respective individual capacities for their actions under the color of state law in violation of plaintiffs right to due process under the Fourth and Fourteenth amendments to the United States Constitution and his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

**COMPLAINT - PAGE 6**

18.  This Court has subject matter jurisdiction over the federal RICO claims, arising under the laws of the United States, pursuant to 28 U.S.C. § 1331. Scannell seeks monetary damages (including treble damages) and injunctive and equitable relief.

19.  Plaintiffs Scannell allege a violation of their constitutional rights under 42 USC 1983.  Scannell sues for damages under this statute.

20.  Plaintiff Scannell is an individual is permitted as a private party to institute actions seeking damages under the Sherman Act pursuant to 15 U.S.C. § 15 ("[a] person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States . . . and shall recover threefold the damages by him sustained").

21.  Plaintiff Scannell is entitled to sue for and obtain injunctive relief under 15 U.S.C. § 26 ("[a] person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws"

22.  This Court has subject matter jurisdiction over these counts under the Sherman Act pursuant to 28 U.S.C. § 1337.

23.  This Court has subject matter jurisdiction over Scannell's state law claims pursuant to the Court's supplemental jurisdiction, 28 U.S.C. §1367.  Scannell is entitled to sue for damages under the state causes of action.

24.  With respect to the facts and circumstances of the Washington lawyer discipline system described below, defendants have acted and continue to act under the color of state law.

25. Upon information and belief, with respect of the facts and circumstances of the Washington lawyer discipline system described below, defendants have acted and continue to act in concert under the color of state law.

**COMPLAINT - PAGE 7**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

**NAMED NON-PARTIES FOR PURPOSES OF IDENTIFICATION**

26.  The Office of Disciplinary Counsel (hereinafter referred to as the "ODC" is an office that exists within the WSBA that is responsible for prosecuting disciplinary actions against attorneys in Washington.

27.  The American Bar Association (hereinafter referred to as the "ABA" is a nationwide attorney profession trade organization.

28. Bernard Friedman (hereinafter referred to as "Friedman"), was a former chairman of the WSBA Disciplinary Board.

29.  Mary Weshler (hereinafter referred to as "Weshler") was a hearing officer in the Scannell case.

30.  Other acronyms used are Revised Code of Washington (RCW), Code of Judicial Conduct (CJC), Rules of Professional Conduct (RPC), Rules for Enforcement of Lawyer Conduct (ELC).

### IV.  GENERAL DESCRIPTION OF THE DEFENDANTS:

31.  The WSBA Disciplinary Board. is to consist of at least three non-lawyer members and one member from each congressional district. (ELC 2.3)

32.  The WSBA Disciplinary Board under ELC 2.4 is further subdivided in to several review committees, each of which has two lawyer members and one from the general public.

33.   The review committees, after consultation with the disciplinary counsel, decide whether charges should be filed against an attorney.  Later, after the charges are heard by a hearing officer, these same review committee members are on the Disciplinary Board that hears the appeals of the hearing officer's decision.

34.  Stanley A. Bastian, , Scott Busby, James M. Danielson, Jeffers Danielson Sonn & Aylward p.s., as persons within the meaning of 18 USC §1961(3) received income derived,

**COMPLAINT - PAGE 8**

directly or indirectly, from a pattern of racketeering activity which was used to acquire an interest in said Washington State Bar Association in violation of 18 USC §1962(a)

35.  Stanley A. Bastian, , Scott Busby, James M. Danielson, Jeffers Danielson Sonn & Aylward p.s., as persons within the meaning of 18 USC §1961(3) received income derived, directly or indirectly, from a pattern of racketeering activity which was used to acquire an interest/control in said Washington State Bar Association in violation of 18 USC §1962(b)

36.  Russell M. Akoi, Marcine Anderson,  James E. Baker, Stanley A. Bastian, Eron Berg, Liza E. Burke, Anthony Butler, Brian L. Comstock, Ellen Conedera Dial, Lonnie Davis, Loren S. Etengoff,  G. Geoffrey Gibbs, Anthony D. Gipe, Lori S. Haskell, David S. Heller, Nancy L. Isserlis, Mark A. Johnson, Peter J. Karademos, Leland B. Kerr, Douglas C. Lawrence, Carla C. Lee, Roger A. Leishman, Catherine L. Moore, Salvador A. Mungia, Kristin Olson, Kathleen O'Sullivan, Patrick A. Palace, Eric C. de los Santos, Marc A. Silverman, S. Brooke Taylor, Steven G. Toole, Edward F. Shea, Jr., Brenda Williams, and Jason T. Vail, , Scott Busby, James M. Danielson, Jeffers Danielson Sonn & Aylward p.s., as persons within the meaning of 18 USC §1961(3) and as persons employed by or associated with the Washington State Bar Association conducted and participated directly or indirectly, from a pattern of racketeering activity in violation of 18 USC §1962(c)

37.  Russell M. Akoi, Marcine Anderson, James E. Baker, Stanley A. Bastian, Eron Berg, Liza E. Burke, Anthony Butler, Brian L. Comstock, Ellen Conedera Dial, Lonnie Davis, Loren S. Etengoff,  G. Geoffrey Gibbs, Anthony D. Gipe, Lori S. Haskell, David S. Heller, Nancy L. Isserlis, Mark A. Johnson, Peter J. Karademos, Leland B. Kerr, Douglas C. Lawrence, Carla C. Lee, Roger A. Leishman, Catherine L. Moore, Salvador A. Mungia, Kristin Olson, Kathleen O'Sullivan, Patrick A. Palace, Eric C. de los Santos, Marc A. Silverman, S. Brooke Taylor, Steven G. Toole, Edward F. Shea, Jr., Brenda Williams, and Jason T. Vail, Christine Gray, Scott Busby, James M. Danielson, Jeffers Danielson Sonn & Aylward p.s., as persons within the

**COMPLAINT - PAGE 9**

meaning of 18 USC §1961(3) and as persons employed by or associated with the Washington State Bar Association conducted and participated directly or indirectly, from a pattern of racketeering activity by conspiring to violate 18 USC §1962(a)(b)(c)

## V.  GENERAL ALLEGATIONS REGARDING THE PLAINTIFF

38.  Plaintiff Scannell was admitted to the WSBA on May 21 of 2001.

39. Plaintiff Scannell has been the subject of proceedings held by the WSBA.

40.  Plaintiff Scannell intends to continue to practice law in the state of Washington at some point in the future.

41.  Plaintiff Scannell seeks to form another Bar Association free from the corruption of the organization misused by the enterprise.

42.  The plaintiff, as outlined in this complaint has attempted to exercise his constitutional rights, including the right to attorney client privilege, his rights to due process, his right to be free from unlawful search and seizure, hiss right to free speech, and hiss right be free of anti-trust influence by the Washington State Bar Association, as well as supporting those who are discriminated against by their race.

43.  Plaintiff Scannell continues to face imminent threats of loss of constitutional rights by the other defendants.  The defendants have repeatedly threatened the plaintiff and his associates with unconstitutional subpoenas and continue to threaten more disciplinary actions even though the plaintiff is already disbarred, by driving up his litigation costs and continually harassing him so as to prevent him from reinstating.

### SUMMARY OF ALLEGATIONS

#### A.  OVERVIEW:

44.  This is a complex civil action for Civil Rights violations, RICO remedies authorized by the federal statutes at 18 U.S.C. 1961 *et seq.*; mail fraud in violation of 18 U.S.C. § 1341, Sherman Antitrust Act in violation of 15 U.S.C. §1;  for declaratory and injunctive relief; for

**COMPLAINT - PAGE 10**

goal." *Pointer v. Texas*, 380 U.S. 400, 405 (85 S.Ct. 1065, 1068, 13 L.Ed.2d 923) (1965).
See also *Douglas v. Alabama*, 380 U.S. 415 (85 S.Ct. 1074, 13 L.Ed.2d 934) (1965).

In Washington state parties have an absolute right to notice of depositions even
though the profession is pervasively regulated. *State v. Miles*, 160 Wn.2d 236, 252, 156
P.3d 864 (2007). Such secret subpoenas lack the authority of law and violate Article I,
section 7 of the Washington constitution which requires "[no] person shall be disturbed in
his private affairs, without authority of law," Article Four and Fourteen of the United
States Constitution.

### B) DUE PROCESS CONCERN ON WHERE A MOTION TO TERMINATE A DEPOSITION IS TO BE HEARD:.

Plaintiff Scannell, filed motions to terminate his depositions and contend that he
was denied due process when motions to terminate were not heard in a proper forum. No
method given in the ELC is given for processing such a motion or who would decide it.

ELC 5.5 states that CR 30 is to be applied by analogy. That rule states that a
motion to terminate the deposition is to be decided in the court in which the matter is
pending review of the issues. Neither the Washington State Disciplinary Board nor the
Washington State Supreme Court has determined what that forum should be and how that
motion should be processed.

In a similar instance in 2004, when one defendant, Jeffery Poole, had his counsel
utilize the Civil Rules to file a protective order against an alleged oppressive discovery
request by disciplinary counsel. The disciplinary board refused to rule on the motion by
refusing to exercise their jurisdiction.   An agreement was reached between Poole's
counsel Kurt Bulmer, and disciplinary counsel, Christine Grey to have the issue heard
before defendant Alexander. Later, Poole was suspended in part, because he brought the
motion before Justice Alexander with other members of the Supreme Court of

**COMPLAINT - PAGE 13**

Washington agreeing that bringing a protective order constituted non-cooperation. *In re Disciplinary Proceeding Against Poole*, No. 200, 193 P.3d 1064, 164 Wash.2d 710 (Wash. 10/09/2008).

Plaintiff was also put in the same position as the foregoing case. As stated by the Ninth Circuit Court of Appeals who independently found that Plaintiffs were correct in *In re: John R. Scannell*, No. 10-80024 (Ninth circuit 2011) found on page 33 of the decision that:

> "Scannell argued, correctly, that ELC 4.7 provided the Bar Association with a clear procedure for using the superior court to compel his attendance at a deposition, and that disciplinary counsel chose instead to contest Scannell's various motions and suits. The procedure under ELC 4.7 would have provided a show cause hearing, a determination whether Scannell's objections were in fact frivolous, and an opportunity to bring himself into compliance. *There is no corresponding procedure to quash a subpoena, although Scannell's writ action was an attempt to fashion one.*" (Emphasis Added)

### C) ENHANCED PENALTIES ASSESSED FOR ASSERTING APPEALS IN PURSUIT OF DUE PROCESS RIGHTS AND IN CONTESTING SECRET SUBPONEAS

Plaintiffs contend that enhanced penalties were applied for exercising constitutional and statutory rights to appeal and process which is also a denial of due process. Charges were added by disciplinary counsel to intimidate the plaintiffs from appealing their due process rights.

Due process principles prohibit prosecutorial vindictiveness. See generally *Blackledge v. Perry*, 417 U.S. 21 (1974 and *United States v. Goodwin*, 457 U.S. 368, 372-85, 102 S.Ct. 2485, 73 L.Ed. 2d 74 (1982). Prosecutorial vindictiveness occurs when "the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights." See also *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987).

**COMPLAINT - PAGE 14**

### D) *ETHICAL WALL ISSUES /COMMON COUNSEL AMONG DEFENDANTS:*

Also noted that when disciplinary counsel, the hearing officer and the disciplinary board employed joint counsel in the above noted case.

An ethics opinion by the WSBA ethics advisory committee states.

**Opinion 93-14**

Question

When an appellate judge has retained an attorney, should that judge recuse himself/herself when another member of that law firm appears in court even though on a totally unrelated matter? Does it matter if the law firm is a large one, located in a large metropolitan area? Would the same advice be given for cases presently under consideration but not yet decided?
Does it make a difference if the property in question is the separate property of the judge's spouse and there are other parties on the same side?

Answer

CJC Canon 3(C) provides that judicial officers should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned.

When an appellate court judge has retained an attorney, the appellate court judge is required to disclose that relationship when a member of that law firm appears in court on a totally unrelated matter and should recuse if there is any objection. This is also true for cases which are presently under consideration but not yet decided. The size and location of the law firm, the fact that the property in question is the separate property of the spouse and the number of parties on the same side does not make any difference.

**Opinion 89-13**

Question

May a court commissioner hear any matters in which the attorney who represents the commissioner in a lawsuit in the commissioner's personal capacity is involved? May a court commissioner hear any matters in which the attorney for the opposing counsel in the lawsuit against the commissioner is involved? May a

**COMPLAINT - PAGE 15**

actual, consequential and exemplary damages;  and for all other relief which this court
determines to be equitable.

45.  By this action, plaintiffs Scannell, as a lawyer admitted to the Washington State Bar
Association of the State of Washington, assert that the WSBA Washington Lawyer Discipline
System as it stands, and as it is applied, violates plaintiff's right to due process under the Fourth
and Fourteenth Amendments to the United States Constitution.

46.  Plaintiff Scannell further asserts that the individually named defendants in bad faith,
have conspired to deny the plaintiff of his right to practice law through a number of actions that
the defendants claim have led to his disbarment.  In addition, the individual defendants have
conspired to form an enterprise whose purpose is to corrupt the judicial system through a series
of predicate acts which will allow prosecutors and attorneys from large firms to practice
unethically without being held accountable for their criminal actions.  The conspiracy so formed
will hereinafter be denoted "the protection racketeering enterprise" or more simply "the
enterprise."

47.  Plaintiff Scannell continue to face imminent threats of loss of constitutional rights by
the other defendants.

**B.  Plenary Control**

48.  The Washington State Supreme Court asserts, with respect to lawyer discipline it
authority is plenary (total) in character.  The court not only controls the judicial process, but the
legislative and executive functions as well.

49.  This means they retain ultimate control as to how rules should be legislated,
interpreted, and enforced, with ultimate authority and due process subject only to the Washington
State Supreme Court.

50.  The actual practice of the Washington State Supreme Court results a hearing process
with  multiple ex parte contacts among and between the defendants.

**COMPLAINT - PAGE 11**

51.  No meaningful safeguards exist or are in place between the defendant decision makers and the prosecution to prevent ex parte contacts, and other conflicts of interest and the resulting lack of due process.

52.  In the instant case, improper use of joint common counsel among the parties, the hearing officer assigned to the case, the disciplinary counsel/prosecutor, resulted in a decision being decided before the case was heard.

53.  Also, ex parte contacts between the defendants and  the State of Washington i.e., the Supreme Court of Washington the ultimate decision maker the Washington State Supreme Court have occurred prior to any hearings or decisions taking place.

54.  While the defendants claim that the disciplinary process is judicial in nature, in fact it lacks necessary due process elements to make it constitutionally sound.

**C.  Specific Conduct resulting in Denial of Due Process**

55.  Plaintiff Scannell contends that in practice, the disciplinary process is not judicial in nature and lacks due process in the following specific instances:

### A) ISSUANCE OF SECRET SUBPOENAS AND DEPOSITIONS WITHOUT NOTICE TO ANY PARTIES

Secret subpoenas and depositions were being held without the any party or potential party being notified by disciplinary counsel.  Plaintiff, contends that he was denied his constitutional rights when Disciplinary Counsel issued secret subpoenas without notice to any of the affected parties

The US Supreme Court has stated: "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional

**COMPLAINT - PAGE 12**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

court commissioner hear any matters in which the attorney is associated with either the commissioner's attorney or associated with opposing counsel?

Answer

CJC Canon 3(C) requires judges to disqualify themselves in a proceeding in which their impartiality might reasonably be questioned. Therefore, a court commissioner may not hear any matters which are not agreed (whether the same be actively contested or any posture of default) in which the attorney who represents the commissioner in a lawsuit in the commissioner's personal capacity is involved or the opposing counsel in the lawsuit is involved. This restriction shall apply while the lawsuit is pending or for a reasonable period of time after its termination. The type of lawsuit is not relevant to the issue of disqualification. The court commissioner may hear matters in which the attorney is associated with either the commissioner's attorney or opposing counsel if 1) the commissioner discloses on the record the relationship to the commissioner's attorney or opposing counsel, 2) that attorney is not associated in any way with the commissioner's lawsuit and the commissioner's attorney or opposing counsel have not been involved in the matter before the commissioner, and 3) offers to recuse. The commissioner may enter all agreed orders brought by the commissioner's attorney, opposing counsel, or any of their associates.

Moreover The ABA Model rules state:

Model Rules of Professional Ethics. http://www.abanet.org/cpr/mrpc/rule_1_0.html. The ABA Model Rules define screening as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law."

No attempt was done by the defendants to isolate themselves and information

flowed freely between all the decision makers and the prosecution.

See also discussion at http://en.wikipedia.org/wiki/Chinese_wall.

*E) EX PARTE CONTACTS BY DEFENDANTS*

COMPLAINT - PAGE 16

King and Scannell contend that ex parte contacts[2] between disciplinary

counsel and the hearing officers, the Disciplinary Board, the Board of Governors,

the Chief Hearing Officer, the Washington State Supreme Court and their clerk,

are extensive and pervasive and a denial of due process. These actions included

undisclosed ex parte contacts with their Clerk, the WSBA Board of Governors,

the WSBA Disciplinary Board, and the Chief Hearing Officer, individual

disciplinary counsel, in both their individual roles and as representatives of the

ODC.  In many of these meetings, the most important issues of there cases were

discussed about King and Scannell.

*In re: John R. Scannell*,  No. 10-80024, (Ninth circuit 2011) found on page

42 the Ninth Circuit Court of Appeals found

But the Task Force minutes…..The minutes demonstrate that various
representatives of the Bar Association took seriously issues that they argued were
frivolous when Scannell presented them as a basis for challenging the
investigation of the Rahrig matter.

Over 300 ex parte contacts have been identified by plaintiff Scannell's case alone.

These actions are strictly forbidden under the RPC, the ELC, and the Code of

Judicial Conduct(CJC) as well as the Washington State Supreme Court's own established

case law precedent:

CJC 1:  An independent and honorable judiciary is indispensable to justice in our
society.  Judges should participate in establishing maintaining, and enforcing high
standards of judicial conduct, and shall personally observe those standards so that
the integrity and independence of the judiciary will be preserved.

CJC 2(A):  Judges should respect and comply with the law  and act at all times in
a manner that promotes public confidences in the integrity and impartiality of the
judiciary.

**COMPLAINT - PAGE 17**

CJC 3(A)(4):  Judges should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according t the law and, except as authorized by law, neither initiate or consider ex parte or other communications concerning a pending or impending proceeding.

RPC 3.5(a)(b):  A lawyer shall not (a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law.  (b)communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order.

ELC 2.6(e)(2)(D):  Hearing officers should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.

*In re Disciplinary Proceeding Against Sanders*, No. 200, 145 P.3d 1208, 159

Wash.2d 517 (Wash. 10/26/2006), a Supreme Court justice could not have any kind of ex

parte contacts with potential parties in a case, even if the subject of the conversations

were only general in nature and did not discuss the specifics of a particular case:

"Where a judge's decisions are tainted by even a mere suspicion of partiality, the effect on the public's confidence can be debilitating. The canons of judicial conduct should be viewed in broad fashion, and judges should err on the side of caution.  Under Canon 3(D)(1), "[j]udges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned."  In Sherman, the court found that where a trial judge "may have inadvertently obtained information critical to a central issue on remand, . . . a reasonable person might question his impartiality." The court set the test for determining impartiality:
 [I]n deciding recusal matters, actual prejudice is not the standard. The [Commission] recognizes that where a trial judge's decisions are tainted by even a mere suspicion of partiality, the effect on the public's confidence in our judicial system can be debilitating . . . . The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that "a reasonable person knows and understands all the facts."
This court in *In re Disciplinary Proceeding Against Sanders* noted that the interest of the State in maintaining and enforcing high standards of judicial conduct under the auspices of Canon 1 is a compelling one. In *Sanders*, this court balanced that interest against Justice Sanders' First Amendment rights and found

**COMPLAINT - PAGE 18**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

that an independent basis for finding a violation of Canon 1 under those circumstances was not possible. Justice Sanders argues that the language in Canon 1 is hortatory and therefore cannot stand as an independent basis for a violation of the Code of Judicial Conduct. In the instant case, Canon 1 sets the conceptual framework under which Canon 2(A) operates. Canon 2(A) provides the more specific restraint, to wit: "Judges should . . . act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Under the circumstances of this case, Canon 1 taken in conjunction with Canon 2(A) provides a sufficiently specific basis to find a violation of the Code of Judicial Conduct. *Here, it was clear that there was a substantial basis and expectation that Justice Sanders would be in contact with possible litigants who had pending litigation before the court and that this contact would be viewed as improper.* We concur with the Commission's finding that it was clearly reasonable to question the impartiality of the justice under the circumstances of this case. *In re Disciplinary Proceeding Against Sanders*, No. 200, 145 P.3d 1208, 159 Wash.2d 517 (Wash. 10/26/2006) *(Emphasis Added by writer)*

The long-standing nature of these improper contacts have been the subject of continual professional criticism by prestigious entities such as the American Bar Association.  Failure of the defendants to address this criticism, has led to a system that does not meet minimal standards set for the profession, and has resulted in denial of his rights to due process under the Fourth and Fourteenth Amendments of the United States Constitution.

**F)  FAILURE TO PROCESS AND RULE ON APPEALS BY WASHINGTON STATE SUPREME COURT.**

The plaintiffs contend that the Washington State Supreme Court's refusal to rule on or even acknowledge filed motions filed by the plaintiff's.  This has affected their due process rights.  On June 30th, 2009, King filed a motion for reconsideration, but there has never been a ruling issued.  Plaintiff Scannell was denied due process when the Washington State Supreme Court and Clerk refused to process motions issued on March 1, 2010, July 13, 2010, July 28, 2010, August 27, 2010 and July 28, 2010.

Such motions have been awaiting ruling on for two years.

**COMPLAINT - PAGE 19**

### G) INVOCATION OF ATTORNEY CLIENT PRIVILIGE/DENIAL OF RIGHT TO COUNSEL

Plaintiff's have been disciplined in fact by refusing to turn over attorney client privileged information. During this suit and defendants' disciplinary proceedings, there was nothing to protect the attorney while the scope or the legality of the subpoena and the scope of attorney client privilege are being contested. This violates the Washington State Supreme Court's own precedent set in *Dike v. Dike*, 75 Wash. 2d 1, 448 P.2d 490 (Wa. 12/05/1968) which allowed the attorney to contest the procedures while litigating the case and not to be held in contempt or prosecuted for further sanctions. This had the effect of denying King's sixth amendment right to counsel as the privileged information could be used against him in criminal proceedings.

The rule in question is as follows:

ELC 5.5 DISCOVERY BEFORE FORMAL COMPLAINT (a) Procedure. Before filing a formal complaint, disciplinary counsel may depose either a respondent lawyer or a witness, or issue requests for admission to the respondent. To the extent possible, CR 30 or 31 applies to depositions under this rule. CR 36 governs requests for admission. (b) Subpoenas for Depositions. Disciplinary counsel may issue subpoenas to compel the respondent's or a witness's attendance, or the production of books, documents, or other evidence, at a deposition. Subpoenas must be served as in civil cases in the superior court and may be enforced under rule 4.7. (c) Cooperation. Every lawyer must promptly respond to discovery requests from disciplinary counsel. 29. .

Among the powers asserted by the ODC is the right to subpoena documents and presumably question the attorney regarding normally privileged attorney client information. This includes information in the possession of the counsel representing the attorney in disciplinary proceedings.

Under ELC 5.4 the attorney has no right to raise attorney client privilege in such cases:

**COMPLAINT - PAGE 20**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

ELC 5.4(b) Attorney-Client Privilege. A lawyer may not assert the attorney-client privilege or other prohibitions on revealing client confidences or secrets as a basis for refusing to provide information during the course of an investigation, but information obtained during an investigation involving client confidences or secrets must be kept confidential to the extent possible under these rules unless the client otherwise consents. Nothing in these rules waives or requires waiver of any lawyer's own privilege or other protection as a client against the disclosure of confidences or secrets.

### H) PLAINTIFF'S FOURTH AMENDMENT RIGHT TO DUE PROCESS WAS FURTHER IMPACTED WHEN HE WAS FOUND GUILTY OF CONDUCT FOR WHICH HE WAS NOT CHARGED WITH.

Plaintiff Scannell was found guilty and punished for conduct for which he was not charged. *In re: John R. Scannell*, No. 10-80024 (Ninth circuit 2011) found on page 39-40:

In addition, the Supreme Court's conclusion is clearly based on conduct outside that charged in the formal complaint: "Scannell has caused serious injury to the legal system by dragging out his disciplinary proceedings for five years." 239 P.3d at 341 (emphasis added). In context, then, uncharged behavior, including Scannell's allegedly "groundless" suit in superior court and his subsequent efforts to disqualify various hearing officers and Board members, appears to be part of the conduct the Supreme Court used to establish the presumptive sanction for the charged conduct. *See* ELC 10.3(a)(3) ("The formal complaint must state the respondent's acts or omissions in sufficient detail to inform the respondent of the nature of the allegations of misconduct.").

.

and footnote 8:

ABA Standard 9.22(c) allows evidence 8 of a "pattern of misconduct" to serve as an aggravating factor, but the Supreme Court appears to have used Scannell's uncharged conduct to establish the presumptive sanction insofar as the pattern established "serious" harm

Plaintiff Scannell seek redress in this situation because blatant denial of due process of this type intimidates any future counsel and from exercising a parties sixth amendment right to counsel.

**COMPLAINT - PAGE 21**

## BACKGROUND TO THE ROLE OF THE WASHINGTON STATE SUPREME COURT AND THE WASHINGTON STATE BAR ASSOCIATION

56. The defendant WSBA was created in 1888, one year before Washington became a state.

57. The WSBA admits to being a private, nonprofit organization authorized by the Washington State Supreme Court to license the state's 28,400 lawyers.

58. The WSBA also claims to be an administrative arm of the Washington State Supreme Court. It administers the admissions, licensing, and discipline functions for the lawyers in Washington.

59. The Washington State Legislature claims the WSBA is legislatively created and an agency of the executive branch of government. The modern, integrated (mandatory membership) WSBA was created in 1933 by legislature enactment the "State Bar Act" (RCW Chapter 2.48), which states the WSBA "is created as an agency of the state". RCW 2.48.010.

60. Since this date, the Washington State Bar Association has been not been performing its functions as intended by law. While it masquerades as a state agency purporting to protect the public against unethical attorneys, it in fact has usually been prosecuting attorneys only in the most obvious cases and then when the attorneys are sole practitioners. Otherwise it serves to protect its membership against scrutiny by the public. In other cases it punishes attorneys such as the defendant, who expose its corruption. In doing so it performs a fraud upon the public.

61. In fact, the organization, collects dues from its members in return for protecting its members from the public who are dissatisfied with the services of the member lawyers. The enterprise does this with a complex legal mechanism which purports to be some kind of court process which gives the illusion of disciplining attorneys. In fact, the process is a mockery of the judicial process specifically designed to waste the public's efforts in sham proceedings. The organization charges less than 4% of attorneys who are complained of compared to other states

**COMPLAINT - PAGE 22**

where 30% of those complained of are charged.  Those who are charged are almost always solo practitioners.  Those who are charged are either egregious cases that can't be ignored, minorities, and attorneys who fail to cooperate with the illicit activities of the enterprise.  The trials held are sham proceedings where very little in terms of a meaningful process takes place.  Some results are predetermined by members of the Enterprise who will target political enemies for investigation.  Attempts to bribe a hearing officer has been made.  Ex parte contacts between the hearing examiners, the Disciplinary Board, and the Washington State Supreme Court are extensive and pervasive even though such actions are forbidden under the Rules of Professional Conduct, and the Code of Judicial Conduct.

62.  These ex parte contacts took place in private meetings organized by the defendants as officers, committee members, and as Disciplinary Board members of the Washington State Bar Association.  These meetings were not organized or controlled by the Washington State Supreme Court.  The WSBA contends that these members generally are not open to the public, not publicized to the public and are not subject to the open meetings act.

63.  The individual RICO defendants, who by their actions sought to perpetuate this fraud conspired together to perpetuate the fraud.  Each of the defendants acted as agents of the other defendants and as agents of the enterprise.

64..  In 1972 the Washington State Supreme Court ruled in *Schwab v. Washington State Bar Ass'n*, 80 Wn.2d 266, 493 P.2d 1237 (1972). that RCW 2.48.060 which provides generally that the board of governors has the power to prescribe rules, establish procedures and to carry out the investigation, prosecution and hearing of all cases involving *discipline, disbarment, suspension, or reinstatement* was without effect .  The court reasoned that since the Washington State Constitution put discipline of attorneys under the exclusive control of the Washington State Supreme Court that the court's control was plenary (total).  The court also ruled that the Disciplinary Board may make recommendations thereon to the Washington State Supreme Court.

**COMPLAINT - PAGE 23**

However, all such power is specifically made subject to the approval of the Washington State Supreme Court.

> The foregoing statute and our past decisions make it evident that this court does not share the power of discipline, disbarment, suspension or reinstatement with either the legislature or the state bar association. The ultimate constitutional power clearly lies within the *sole jurisdiction* of the Supreme Court. This point is conceded in the brief of the respondent [Washington State] [B]ar [A]ssociation. Such constitutional concept leaves no room for the notion that a lawyer's authority to practice law is subject to some vague dual existence, one part of which may be terminated by the bar's suspension of his membership while the other (*i.e.*, his authority to *practice law* before the courts) is subject to control of the Supreme Court. In short, membership in the state bar association and authorization to continue in the practice of law coexist under the aegis of one authority, the Supreme Court. (*Emphasis added*).

*Schwab v. Washington State Bar Ass'n*, Id at 269

65.  In *Schwab v. Washington State Bar Ass'n*, the Court makes two important declarations regarding the authority to discipline, disbar, suspend and reinstate attorneys.  First, the Court declares that, "[t]he ultimate constitutional power clearly lies within the sole jurisdiction of the Supreme Court."  Second, the Court states, "RCW 2.48.060 provides generally that the Disciplinary Board of governors has the power to prescribe rules, establish procedures and to carry out the investigation, prosecution and hearing of all cases involving discipline, disbarment, suspension, or reinstatement."  As the Court noted, it, not the Legislature, has the *sole* law making authority in these cases, and to the extent that RCW Chapter 2.48 is a creation of the Legislature, the Legislature having *no* such authority, it is of no effect.

66.  The Court's exclusive authority to discipline lawyers leaves no room for joint control by the Legislature.  If this power is held solely by the Court and not shared with the Legislature, RCW Chapter 2.48, having been created by the Legislature and not by the Court, is a nullity and rather than providing the board of governors any power, it provides nothing.

**COMPLAINT - PAGE 24**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

67. The practical effect of *Schwab vs. WSBA* was for the Washington State Supreme Court to assert total (plenary) control over the lawyer disciplinary process. While it did not address the executive branch in its decision, by the logic of the decision, the Washington State Supreme Court assumed not only legislative powers, but prosecutorial and police powers as well. In its decision, the Washington State Supreme Court asserted that it supervised all aspects of the disciplinary process, which included not just judicial, legislative, and prosecutorial authority, which it would have immunity from, but also police investigative powers, where they do not have total immunity.

68. The Washington State Supreme Court also exercises administrative supervision over their staff which does not have immunity.

69. Since the Schwab decision, the defendants have mixed their judicial, legislative, and prosecutorial roles with their police investigative and administrative roles, so as to become indistinguishable.

69. In asserting their plenary control powers, the defendant Supreme Court justices hold undisclosed private ex parte contacts with disciplinary counsel including defendant Busby, the defendant Washington State Board of Governors, the Washington Disciplinary Board, even when the disciplinary counsel acts an investigator which is a police function

70. They hold these ex parte meetings in private settings organized by the Washington State Bar Association, not by the Washington State Supreme Court.

71. By commingling their powers and having extensive ex parte contacts, the disciplinary process as practiced and supervised by the Washington State Supreme Court is no longer a judicial process.

72. By asserting plenary control and then having numerous ex parte contacts, the Court violated the concept of an independent judiciary which is a provision of both the Washington and the United States Constitution.

**COMPLAINT - PAGE 25**

73.  In 1976, the Washington State Supreme Court, ruled that the WSBA is *not* an agency of the state, "in spite of the language in the State Bar Act, the association was not an 'agency of government' so as to be one of the 'state executive offices'..." *Graham v. State Bar Ass'n*, 86 Wn.2d 624, 631-2, 548 P.2d 310 (1976) (and cases cited therein).

74.  In 1993, the Washington State Bar's disciplinary system was scrutinized by the ABA. The ABA issued a report which included among its conclusions, that the Washington State Supreme Court should take steps to exert more direct control over the disciplinary system.  This would include taking steps to distance itself and the disciplinary process from the Washington State Bar Association.

75.  The report was critical of the involvement of a professional trade organization running the disciplinary process as it gave the appearance of having discipline subject to the influences of the internal politics of a trade organization.

76.  Sometime during this era, the leadership of the Washington State Bar Association began to form a conspiracy which would eventually encompass the defendants, which devolved the Washington State Bar Association into a classic protection racket.  The leadership of the Washington State Bar Association would collect fees from the membership in return for "protection" from clients that would file bar complaints.  In return, the WSBA and the defendants have one of the lowest charging rates in the nation.

77.  In return for this protection, member attorneys were expected to be loyal to the Bar, continuing paying dues, and not disrupt the enterprise by exposing its illicit activities.

78.  In 2000, the plaintiff Scannell filed a grievance against Christine Gregoire, who is now the governor of the State of Washington.  In this grievance Scannell charged that Ms. Gregoire was negligent in supervising her subordinate Janet Capps who failed to file a notice of appeal in a timely fashion, which cost the taxpayers the right to have a $17 million appeal heard.

**COMPLAINT - PAGE 26**

(See *Beckman v. State*, No. 25982-6-II (Wash.App.Div.2 08/21/2000) (hereinafter referred to as the "Beckman case".

79.  The Disciplinary Board at the time held a press conference claiming they were going to investigate Ms. Capps, ignoring confidentiality rules which normally would have Capps during the investigation state.  They also impermissibly injected their judicial role into the investigative or police process, thereby destroying the illusion of an independent judiciary.  In reality, the Disciplinary Board was intending to use Capps as a scapegoat for the unethical actions of then attorney general Christine Gregoire.

80.  Scannell filed more grievances against Ms. Gregoire on another case, unrelated to the Beckman case, where she committed a similar violation.  Ms. Gregoire requested and the Disciplinary Board granted, an indefinite stay of the investigation of the grievance.

81.  At the time Scannell was filing the complaint, he was working for the Law Offices of Paul H. King.

82.  Unbeknownst to plaintiff Scannell and Paul King, the chairman of the disciplinary was Loretta Lamb who was co-counsel and supervising attorney of Ms. Capps on the Beckman case and a direct subordinate of Gregoire.  As supervising attorney, Loretta Lamb was responsible for properly managing the case and therefore was guilty of violating the Rules of Professional Conduct.

83.  Immediately upon the filing of the complaint, the Disciplinary Board and/or disciplinary counsel began harassing Plaintiff Scannell and Paul King by making unjustified demands for records and otherwise harassing them by investigating and charging for grievances that the Disciplinary Board normally doesn't care about.  Disciplinary counsel first demanded that King produce all of Scannell's calendars for three years.  This was a demand that was completely unrelated to any legitimate bar complaint.  The purpose of the demand was to "send a message" that cooperation with the enterprise needed to perpetuate the fraud.  That is, the

**COMPLAINT - PAGE 27**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

Washington State Bar Association would "send a message" that any attorney that did not cooperate with the protection racket would suffer the legal equivalent of burning his business down. (disbarment) This action of "sending a message" was totally unrelated to legitimate aims of the bar association, and was designed to perpetuate the enterprise's function of exchanging dues for protection.

84. The reason disciplinary counsel began its harassment of King and Scannell was to prevent the exposure of the fraud that defendants were perpetuating upon the public. This fraud including protecting powerful attorneys such as Gregoire and those who were on the Disciplinary Board from scrutiny from the public, thereby increasing the probability of illicitly making money at their profession. This came a common response by the defendants, which was to protect their racketeering enterprise by extorting concessions from the defendants.

85. The disciplinary counsel then turned its attention on Paul King in retaliation for Mr. Scannell's filing of the Gregoire grievance. The Washington State Bar Association deviated from its standard practice of rarely performing more than a perfunctory investigation on bar complaints by investigating anything it could learn about the King firm. It first demanded trust account records for his entire firm when it did not have adequate cause to do so. This was done to "send a message" to Paul King that Scannell's grievance threatened exposure of the racketeering enterprise. As such it was a predicate offense under RICO as a classic extortion scheme outlawed by the Hobbs Act..

86. After getting a list of clients members of the racketeering enterprise began scrutinizing every aspect of the King firm. Within two years, virtually all the time worked at the Law Offices of Paul King were spent responding to bar complaints manufactured by the racketeering enterprise.

87. John Scannell became an attorney in May of 2001. Within a short period of time, over 30% of the plaintiff's practice was spent dealing with unjustified investigations by the

**COMPLAINT - PAGE 28**

enterprise. The acts of threatening King and Scannell with unjustified Bar Complaints were a form of extortion, expressly forbidden by the Hobbs act, as it became a method by which to coerce cooperation from the defendants from exposing the corrupt actions of the defendants which including paying protection (dues). This is a predicate offense under RICO.

88.  Paul King eventually succumbed to the massive investigations, pleading guilty in hopes that the never ending investigations would cease. He pleaded guilty to a two year suspension which began on April 24, 2002.

89.  Unknown to the racketeering enterprise, Paul King also pleaded guilty to a three year suspension in federal court part of which was reciprocal in nature. This was contained in a sealed court file in United States District Court, Western District of Washington.

90.  During this time, John Scannell was an attorney for Paul King and remained so until he was eventually "disbarred." He had an agreement where he was the attorney for Paul King on virtually all of his business matters including before the Washington State Bar Association Disciplinary Board.

91.  During the Marshall's career as an attorney, the defendants engaged in institutionalized systematic racism in connection with the operation, control and structure of its lawyer disciplinary system in Washington State. The pervasiveness of this discrimination can be documented through factual and empirical studies which will confirm that African-American and ethnic minorities are substantially more likely to be disciplined than Caucasian lawyers in Washington State.

92.  Each of the defendants have engaged in disparate treatment of African-American and ethnic minorities through the use of facially neutral policies and practices that have a disparate discriminatory impact on African-American and ethnic minority lawyers.

**COMPLAINT - PAGE 29**

93.  The use of unbridled discretion of prosecutors, review committees, hearing officers, disciplinary board members and justices of the Washington State Supreme Court allows the selection of racial minority lawyers for prosecution in a racially biased manner.

94.  Although the defendants were subject to Title VII and thus were required under the Uniform Guidelines on Employee Selections procedures to monitor the impact of their selection procedures on African American attorneys, they failed to so, and instead promulgated policies and procedures that hid the impact of their selection procedures, and in fact destroyed data in a systematic fashion so as to make it difficult, if not impossible to discover the true extent of their racially discriminatory policies.

95.  There is no legitimate business reason justifying each of the aforementioned policies and practices that could not be achieved by a policy that does not have a discriminatory impact or a greatly reduced discriminatory impact.

96.  It is beyond dispute that African-American and other ethnic minorities have long been victims of discriminatory treatment in public accommodations and have been deprived from equal opportunity in employment, education, housing and otherwise to participate in the American dream, simply because of the color of their skin.

97.  Defendants are aware that African-Americans and ethnic minorities have long been unrepresented and/or under-represented in the legal system and are susceptible to disparity in treatment due to racial discrimination.  The defendants have utilized policies and procedures that have adversely impacted African-American and ethnic minority lawyers.

98.  Bradley Marshall is an African-American attorney.  As a minority, he was thus targeted for special scrutiny because of his race.  Historically, Afro-Americans were completely under-represented in the law profession generally and in the Washington State Bar Association in particular.  The Washington State Bar Association masked its discriminatory policies by keeping the effects of the enforcement of the Rules of Professional conduct, secret.  By doing so, it could

**COMPLAINT - PAGE 30**

use minorities as scapegoats for its own corrupt policies which included the protection racket enterprise. Also by doing so, the defendants engaged in racial discrimination. There is clear disparate treatment of Afro American attorneys such as Marshall as compared to Caucasian attorneys. The disciplinary counsel would not extend its favored treatment it gives to Caucasian attorneys to Afro-American attorneys. More importantly, the Washington State Bar Association interprets its bar rules in such a fashion that its interpretations have an adverse impact on minorities.

99.    During his career as an attorney, Bradley Marshall filed numerous racial discrimination administrative claims and lawsuits on behalf of his clients, which were widely publicized by local newspapers and television news companies.

100.  On October 1, 2002, the Washington State Supreme Court defendants implemented ELC 5.5.

101.  Under this rule, as eventually interpreted by the Washington State Supreme Court, the court delegated unprecedented police powers to the Washington State Bar Association.

102.  The rule allows a disciplinary counsel to secretly issue a subpoena to anyone he wants, demanding testimony and records without notifying the target of an investigation notice. Since the witness usually has no idea as to what is being investigated, he has no ability to object to any of the questioning on the basis of relevancy.

103.  The attorneys who the depositions are about, since they have no right to notice, cannot object. Thus there is no limit to the scope of the questioning. There is no provisions for filing for protective orders to limit the scope of questioning. It is the modern day equivalent to a star chamber.

104.  The protection racketeering defendants implemented the rule to achieve the ends of the racketeering enterprise, which was to extort protection from the member attorneys in return for allowing them to practice corruptly and without oversight. By doing so, they would gain

**COMPLAINT - PAGE 31**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

control over the practice of law in Washington and thereby obtain unlawful control of the Government. The passage of ELC 5.5 is an attempt unlawfully corrupt the legal system of Washington, by surreptitiously doing away with the Bill of Rights guaranteed by both the Washington State and United States Constitution and implement a system whereby attorneys in Washington could unethically practice law for profit.

105. The racketeering defendants routinely used the mail to utilize their new rule and to deliver their unconstitutional subpoenas as well as otherwise perform their fraud upon the public. By information and belief, these acts number in the hundredss, each of which are predicate offenses under RICO.

106. On April 4, 2003, defendant Danielson secretly negotiated a contract where he would work for the Washington State Bar Association as the "Chief Hearing Officer." Members of the enterprise negotiated the contract to further their goal of domination of the legal profession of Washington through corrupt means.

107. Under the scheme as negotiated by members of the enterprise, defendant Danielson would share a $30,000 salary with defendant Bastian, who was president of the WSBA Board of Governors. Since the WSBA was the charging party in cases where members such as Scannell, King, and Marshall, this would secretly give the WSBA BOG control over who was selected as hearing officers. This would also allow the BOG to set up sham trials for defendants such as King, Marshall, and Scannell by pre-selecting judges that were predisposed to making findings of guilt against the political enemies of the enterprise.

108. Part of extortion blackmail scheme is to prevent the plaintiffs and others like them from even attempting to utilize their constitutional right to a trial. The disciplinary counsel are given broad powers to demand hundreds of thousands of documents within a very short time, making it impossible for the defendants to continue practicing or conducting any kind of business or employment while defending against the ensuing paper war. In 2004, when one targeted

**COMPLAINT - PAGE 32**

attorney, Jeffery Poole, had his counsel attempt to utilize the rules to file a protective order against an oppressive request, the disciplinary board ruled on the motion by refusing to exercise their jurisdiction. *In re Disciplinary Proceeding Against Poole*, No. 200, 193 P.3d 1064, 164 Wash.2d 710 (Wash. 10/09/2008). An agreement was reached between Poole's counsel Kurt Bulmer, and disciplinary counsel, Christine Grey to have the issue heard before defendant Alexander.

109. Later, Poole was suspended in part, because he brought the motion before justice Alexander with other members of the enterprise agreeing that bringing a protective order constituted non-cooperation. In doing so, members of the protection racketeering enterprise ignored the dictates of CR 30, which suggests that any deposition is stayed while a motion to terminate the deposition is considered..

110. Christine Grey did this to "send a message" to other members of the WSBA as to what would happen if they stood up to the activities of the protection racketeering enterprise. It was an attempt to extort the cooperation of Poole, therefore being a violation of the Hobbs act and a predicate offense under RICO.

111. In 2003, plaintiff Scannell began representing Stacy Matthews and Paul Matthews over criminal charges that had been filed against both of them. Before his representation began he verbally told both of them that there might be a potential problem of a conflict of interest arising in the future. He stated that if that occurred, that he would have to withdraw representation of both of them. Stacy Matthews and Paul Matthews knew this, but wanted Scannell to represent them anyway. The reason for this was the criminal charges were being initiated by Mr. Matthews former employer and they did not want the criminal charges to impact the civil suit they had hired Scannell to file on their behalf.

112. The interest of Scannell, and Matthews interests in both the civil and criminal suits were the same. All three wanted the criminal trials to impact the civil trials as little as possible.

**COMPLAINT - PAGE 33**

For that reason, all three had a vested interest in making sure that the criminal charges were as light as possible and would have as little impact on the civil case as possible. The Matthews understood this and this was the reason that they wanted Scannell to represent them, as public defenders had no vested interested in the civil trial and already told the Matthew's they would not take the considerations of the civil trial when negotiating the plea. Scannell's actions were in compliance with the Rules of Professional Conduct as they existed at the time.

113. Later, in the summer of 2004, both Paul and Stacy Matthews entered an Alford plea to the charges. Stacy Matthew's sentence was slightly longer than Paul Matthew's for two reason. First, she had more evidence against her in case because she had allowed the police officers to tape an admission which put her in a worse light. Second, she had already pleaded guilty to another set of charges in another county. By accepting a slightly longer sentence, she achieved the benefit of serving the sentences concurrently instead of consecutively.

114. The sentencing was presided over by Judge Comstock. At the hearing, there was some concern expressed by the judge that a potential conflict of interest existed in the case and wondered if it had been adequately explained to them by counsel. The judge asked each defendant what his counsel had told them about the potential conflict. At the time, both defendants told the judge what the potential conflicts were and affirmed it had been explained to them by counsel. After the discussion, the judge was satisfied there was no problem in the acceptance of the pleas and ratified the agreement.

115. On January 14, 2005, WSBA hearing officer Tina Killian submitted her first known employment application for a WSBA disciplinary counsel position. She then presided in *In re Eric C. Hoort*, Pub. File No. 04-00037, without recusing herself or notifying respondent's counsel in that case. Neither James Danielson, the WSBA's chief of hearing officers, the WSBA's disciplinary counsels, nor anyone else at the WSBA took any action after learning of this and did not remove her from the hearing officer list. The actions of making an ex parte

**COMPLAINT - PAGE 34**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

contact with a prosecutor and attempting to extract a "job" from the disciplinary counsel is attempted bribery and a predicate act under RICO. By not disclosing her ex parte contacts she committed misrepresentation by omission, which is a violation of RPC 4.1. She used the mails to commit her misrepresentation so that was mail fraud, a predicate offense under RICO.

116. On or before October 18, 2005, John Scannell was served with two subpoenas duces tecums requiring him to appear for a deposition pursuant to ELC 5.5 (a subpoena issued before charges have been filed) to be taken on October 25, 2005.

117. One subpoena was issued pursuant to WSBA file No. 05-00312, which concerns a WSBA-initiated complaint concerning Scannell's representation of his client Paul Matthews

118. The other subpoena was issued pursuant to WSBA file No. 05-00873, which was related to a WSBA complaint filed against Scannell's client Paul King by King's client Kurt Rahrig.

119. That subpoena sought all documents, including emails, and other electronic documents relating to Kurt Rahrig and/or *Kurt Rahrig v. Alcatel USA Marketing Inc. et al*,

120. The documents subpoenaed would have included records covered by the attorney-client privilege, arising from Scannell's representation of King. This included, e-mail consultations regarding the drafting of legal documents and pleadings regarding how King should respond to allegations of misconduct.

121. The documents subpoenaed would have included all electronic versions of drafts of different pleadings made by Scannell and King. By gaining access to these documents, members of the enterprise could gain knowledge as to how Scannell and King went about drafting documents.

123. Since the Washington State Bar Association was investigating King for practicing law without a license in Virginia, the attorney client privileged conversations could potentially be used in later criminal proceedings.

**COMPLAINT - PAGE 35**

124.  By demanding thousands of irrelevant documents such as this, members of the protection racketeering enterprise could bury the plaintiff with mountains of paperwork, possibly gaining knowledge of privileged attorney client privileged information in other cases by examining the metadata contained in the electronic files, and otherwise make it impossible for the plaintiff to carry on the practice of law.

125.  By issuing such an oppressive subpoena, Busby committed an act of extortion, a predicate offense under RICO.

126.  The subpoenas were for a deposition on the 25th of October, 2005, but were postponed because of a conflict in Scannell's schedule.

127.  King, a Washington attorney, was the subject of a WSBA investigation arising from a bar complaint filed by Kurt Rahrig.

128.  King was not notified of Scannell's deposition.

129.  Scannell represented King before the WSBA and in a subsequent appeal to the Washington State Supreme Court.

130.  Scannell also represented King in virtually all of his other legal cases up to that point, including giving advice on the Rahrig case.

131.  Disciplinary counsel also issued subpoenas duces tecum on October 12 and November 2, 2005, commanding Mr. King to appear and produce documents in the Rahrig investigation.

132.  Scannell was not notified of the King depositions.

133. The October 12, 2005, subpoena, to King had to be reissued on November 3, 2005, because King the subpoena was not served by the WSBA.  That subpoena was scheduled for a November 22, 2005 deposition.

134.  During this time, the Washington State Bar Association issued at least one more subpoena regarding investigations of King and Scannell under ELC 5.5.

**COMPLAINT - PAGE 36**

135.  Using their newly granted subpoena powers under ELC 5.5, investigators for the WSBA claimed they could subpoena members of the public without giving individuals who were the subject of the investigation notice of the depositions.

135.  On October 25, 2005, disciplinary counsel for the Washington State Bar Association, Scott Busby, WSBA # 17522, deposed Mark Maurin a former employee of both Scannell and King, and conducted an investigatory deposition concerning King and Scannell.

136.  No notice was provided to plaintiffs King nor Scannell.

137.  King nor Scannell did have knowledge of the deposition.

138.  King nor Scannell did not attend the Maurin deposition.

139.  As a confidential employee who helped write briefs, Mark Maurin would have been privy to attorney client conversations of Scannell and King.

140.  Since Mark Maurin did not have counsel and did not possess knowledge as to what the investigation was about, he had no way of knowing what questions were privileged or when he could object on the basis of privilege.

141.  By threatening Maurin with contempt if he did not respond to questions and obtaining information bout Scannell and King he was not entitled, Busby committed extortion, a criminal act under the Hobbs Act and a predicate offense under RICO.

142.  The continued Scannell deposition commenced on November 1, 2005, but was suspended when Scannell made a demand pursuant to CR 30(d) that the deposition be suspended to permit him to file a motion to terminate or limit the scope of the examination.

143. 84.  CR 30 (d) in particular states:

**COMPLAINT - PAGE 37**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

Upon demand of the objecting party or deponent, the taking of the deposition shall be suspended for the time necessary to make a motion for an order.144.  Scannell made the motion to terminate the deposition on November 3, 2005.

145.  Existing Washington State caselaw in *Dike v. Dike*, 75 Wash. 2d 1, 448 P.2d 490 (Wa. 12/05/1968) and RPC 1.6 require an attorney to refuse an order pending appeal of issue relating attorney client privilege.

146.  This motion was never ruled upon by the Disciplinary Board nor the Chief Hearing Officer.

147.  On November 10, 2005,  Paul King was served with one subpoenas duces tecum requiring him to appear for a pre-charging deposition pursuant to ELC 5.5.

148.  That deposition was suspended when King filed a motion for a protective order.

149.  That motion was similar to the motion of Mr. Scannell concerning the same subject matter (toterminate the deposition) concerning Mr. Rahrig in that it also contended, among other things, that the WSBA lacked jurisdiction to investigate a grievance concerning alleged representation of a client in Virginia.

150.  It also complained about the WSBA conducting depositions without giving King or Scannell notice and asked that the Mark Maurin deposition be suppressed.

151.  The Washington State Bar Association asserted that Mr. King engaged in the unauthorized practice of law by participating in a case in Federal Court in Virginia.

152.  However, even though alleged activity was before a tribunal in Virginia, the plaintiff was subjected to the subpoena in Washington, in violation of Washington's RPC 8.5(b) which provides for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits is used, unless the rules of the tribunal provide otherwise.

153.  The Washington State Bar Association asserted that Scannell aided King in the unauthorized practice of law in a case in Federal Court in Virginia.

**COMPLAINT - PAGE 38**

154.  Even though alleged activity was before a tribunal in Virginia state, Scannell was subjected to the subpoena in Washington, in violation of Washington's RPC 8.5(b) which provides for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits is used, unless the rules of the tribunal provide otherwise.

155.  By demanding private records and then by charging Scannell for protecting the attorney client privilege, defendant Busby attempted to co-coerce the cooperation of Scannell. This was extortion, a violation of the Hobbs Act, and a predicate offense under RICO.

156.  The WSBA asserted that Scannell assisted King in the practice of law, but it is unclear whether or not Rahrig alleged that Scannell engaged in any misconduct. Scannell maintained in his response that he was never consulted regarding the Rahrig matter. He additionally maintains that he is not a partner of King, and did not associate on the case with King. All parties agree that Scannell and Rahrig only met briefly on one or two occasions, that Scannell never performed any legal services for Rahrig, and that Scannell never agreed to represent Rahrig. However, even though alleged activity was before a tribunal in Virginia, the plaintiff was subjected to the unconstitutional subpoena in Washington, in violation of Washington's RPC 8.5(b).

157.  A motion to terminate the Scannell deposition concerning Rahrig was made in writing by Scannell on November 3, 2005. Scannell argued that the WSBA lacked jurisdiction to investigate a grievance concerning King's alleged representation of a client in Virginia. He also alleged that the deposition was intended to elicit privileged attorney-client information and that the privilege had not been waived by King. In issuing subpoenas without probable cause and without notifying the target of the deposition, King, defendant Busby violated the constitutional rights of Paul King to counsel. By not notifying King and thus, keeping him out of the deposition, Scannell could not assert attorney client privilege, as ELC 5.4 prevents him from

**COMPLAINT - PAGE 39**

doing so. This process of coercing attorney client privilege from Scannell under threat of disbarment is extortion and therefore a predicate offense under RICO.

158. Rahrig asserted that King engaged in the unauthorized practice of law by participating in a case in Federal Court in Virginia while suspended from the State Bar Association in Washington. While Washington law requires bar complaints connected with a court in another state, the plaintiffs refused to do so, as they wanted to use unconstitutional subpoena powers bestowed upon them by their fellow co-conspirators of the enterprise on the Washington State Supreme Court. King filed a protective order motion on November 21, 2005 challenging Washington's jurisdiction to conduct the deposition.

159. The WSBA filed a formal complaint on November, 2005 against Bradley Marshall, after he had filed suit against a client for fees owing to Marshall. Bradley Marshall, by suing the client had not relied upon the protection scheme for protection and therefore was working outside the parameters set by the enterprise.

160. On December 5, 2005, Tina Killian was appointed to preside over the Marshall's disciplinary case in the *Rheubottom* matter. When she was appointed, she failed to disclose her earlier job application committing misrepresentation by omission under RPC 4.1. Her subsequent communications by mail were thus mail fraud, a predicate act under RICO.

161. On December 14, 2005, the Chairman of the Disciplinary Board Bernard Friedman (Friedman), purporting to have some kind of authority to rule on Scannell's motion to terminate as well as King's Motion for a protective order, denied the motion without giving reasons for his decision in WSBA cases 05-00874 and 05-00302.

162. The Chairman's decision to issue an order, contradicted the precedent established in the Poole case, whereby the Chairman of the Disciplinary Board declined jurisdiction to rule pre-charging deposition. This is part of a pattern by the protection racketeering enterprise. The plaintiff was put in a "no win" situation, no matter how he chose to exercise his rights, the

**COMPLAINT - PAGE 40**

defendants would change the rules so that plaintiff's would always be "wrong" and "frivolous." Since Washington Court Rule 30 does not allow for enforcement of a subpoena while a protective order is pending, as since both the Disciplinary Board and the Washington State Supreme Court refuse to rule on the protective order, all actions taken against Scannell from this point in time forward are null and void as they are attempts to enforce a subpoena for which a motion to terminate the deposition had not been ruled upon.

163. King and Scannell each objected to the authority of Friedman to issue an order as they contended he had no authority under existing ELC rules. King and Scannell contended that that the Chief Hearing Officer had the authority.

163. Acting on the "order" issued the previous year in WSBA cases 05-00874 and 05-00302, disciplinary counsel Busby attempted to reschedule the depositions of plaintiff Scannell in a deposition notice dated April 20, 2006.

164. Busby rescheduled the Matthews' deposition for May 11, 2006 in WSBA case 05-0032. The Rahrig deposition was rescheduled for May 19, 2006 in case 05-00874.

165. On May 2, 2006, less than twenty days before the hearing for Bradley Marshall was scheduled to start, the WSBA filed its First Amended Formal Complaint, adding three new counts. On May 16, 2006, Ms. Killian allowed the WSBA's filing of its First Amended Formal Complaint.

166. Scannell attended the deposition on the Matthews grievance on May 11, 2006 and answered all questions proposed to him.

167. Scannell refused to take part in the Rahrig deposition on May 19, 2006, because he claiming he had not been tendered witness fees in violation of RCW 2.40.020, RCW 5.56.010, ELC 5.5, CR 30, and CR 45.

**COMPLAINT - PAGE 41**

168. In May 25, 2006, the WSBA posted on its Web site an opening for disciplinary counsel. The next day, Ms. Killian inquired about the open disciplinary counsel opening. This letter was an undisclosed ex parte contact forbidden by RPC 3.4 in that she concealed this letter from Bradley Marshall by not disclosing it. It was also an undisclosed attempt to solicit a bribe and therefore a predicate offense under RICO.

169. On June 1, 2006, disciplinary counsel forwarded an order to Ms. Killian for signature. Within hours they learned of Tina Killian's application, but took no action. The failure to notify Marshall was an act of misrepresentation by omission, a violation of RPC 4.1. In all of her subsequent communications, her failure to mention the ex parte contact was therefore mail fraud, and attempted bribery, both predicate offenses under RICO.

170. On June 2, 2006, the Anne Seidel responded to Killian's job application on promising to expedite her job application. On June 2, 2006, Killian signed the order sent to her on June 1, 2006. By signing the order, Killian had signaled that she intended to continue on hearing the case with the hopes of obtaining a job offer in exchange for dealing harshly with Marshall. Such actions constitute bribery, a predicate offense under RICO..

171. Board chairman Friedman denied King's motion for a protective order on June 6, 2006 in WSBA case #00854.

172. On June 8, 2006, the WSBA disciplinary counsel's office sent Killian an application for the open position. By failing to notify Marshall of the ex parte contact, in subsequent mailings to him, the WSBA committed misrepresentation by omission, which is a violation of RPC 4.1 and mail fraud, a predicate offense under RICO. Members of the Disciplinary Counsels office knew that contacting a sitting judge with a job offer violated the Rules of Professional Conduct, but did it anyway to gain Killian's cooperation in retaliating against Marshall. These actions constitute attempted bribery, a predicate offense under RICO.

**COMPLAINT - PAGE 42**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

173.  Defendant Busby on June 13, 2006 attempted to reschedule the deposition of King on June 28, 2006 in WSBA case #00854.

174.  On June 13, 2006, Scannell was re-served with a subpoena, this time was paid witness fees.

175.  On June 20, 2006, disciplinary counsel informed Kurt Bulmer, Marshall's attorney, of Tina Killian's application, but refused to disclose other relevant information. The failure to disclose other relevant information was misrepresentation by omission, and a fraud upon the court. This was a predicate offense under RICO. On June 22, 2006, a letter was sent to Killian requesting she recuse herself. On June 26, 2006, Ms. Killian recused herself.

176.  As to the disciplinary counsel and the WSBA generally, they were aware of Killian's actions in *In re Eric C. Hoort* and no action was taken.  This is a predicate act under RICO.  They also were aware of Killian's actions in Marshall's disciplinary matter and took no action for almost twenty days after Killian's inquiry into this new disciplinary counsel opening. This makes two attempted bribes and both are predicate acts under RICO.

177.  Two other hearing officers were appointed and objected to in the Marshall case, exhausting all preemptory challengess.

178.  On July 5, 2006, Scannell again refused to testify because his client Paul King had not been notified of the deposition.  Under the rules that were in effect at that time, John Scannell would have had to turn over attorney client information that had been subpoenaed because he had no right to assert attorney client privilege under ELC 5.4.  However, Mr. King had a right to assert attorney client privilege if he had been notified of the deposition.

179.  Another motion to terminate the deposition  was filed by Scannell on July 6, 2006 in WSBA case no. 05-00874.  The Association responded on July 25, 2006 with a final response by Scannell on August 1, 2006.

**COMPLAINT - PAGE 43**

180. On July 20, 2006, King filed a motion for a protective order, this time complaining that Scannell had not been given 5 days notice as a party to the deposition as required by ELC 5.5 and CR 30 in case no. 05-0085480. On July 20, 2006, Busby attempted to take deposition of Paul King in case no. 05-00854.

181. Meanwhile, in August of 2006, the American Bar Association released another critical report on Washington State's lawyer discipline system. It was criticized for allowing having the WSBA play a dominant role in the disciplinary process recommended that the court should distance the disciplinary process from the Washington State Bar Association. Among its criticisms were that the "ability of the disciplinary counsel's office to operate with the adjudicative function of the system was at risk". The report cited the Board of Governors supervisory control over the Disciplinary Board and the disciplinary counsel as examples of improper political influence over the disciplinary process and criticized the WSBA for being the grievant in many of the cases that came before the Board.

182. On August 10, 2006, James Danielson, appointed himself to preside over Mr. Marshall's prosecution. However, when he appointed himself, he made no disclosures to Marshall of his conflict of interest created by the payment of his salary by the WSBA and the kickback of part of his salary to defendant Bastian, who was the president of the WSBA. He notified Marshall by mail committing an act of misrepresentation by omission under RPC 4.1 and mail fraud under RICO.

183. On August 17, 2006, Gail McMonagle (McMonagle), a new chairperson of the WSBA Disciplinary Board issued an "order" on behalf of the Washington State Bar Association denying Scannell's motions in case # 05-00874.

184. Scannell responded to McMonagle with a motion for reconsideration that she did not have authority to issue an order on behalf of the Disciplinary Board on August 25, 2006.

**COMPLAINT - PAGE 44**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

185. In August 26, 2006, Danielson denied Marshall's motion to vacate Killian's Order allowing the filing of the WSBA's First Amended Complaint.

186. King's second motion for protective order was denied on September 20, 2006 by McMonagle in case no. 05-00854.

187. Scannell's reconsideration motion was denied with another "order" from McMonagle on September 21, 2006.

188. Both King and Scannell considered McMonagle's order void because she acted beyond her authority.

189. In addition Scannell refused to follow McMonagle's order because it ordered attorney client privileged documents produced before appeals could have been completed. On October 16, 2006, John Scannell filed an action in King County Superior Court case #06-2-33100-1 SEA which sought a ruling on the validity of the subpoena.

190. Shortly thereafter, a copy was faxed to Scott Busby, one of the defendants.

191. On December 13, 2006, an amended petition to the King County action was filed in case #06-2-33100-1 SEA which included Paul King as a plaintiff.

192. On December 14, 2006, Kurt Bulmer issued a subpoena to Tina Killian and the WSBA requesting all documents regarding Killian's employment applications. The WSBA moved to quash and opposed all discovery requests that could have revealed whether Danielson provided training on the ethical propriety of hearing officers' efforts to obtain employment with the WSBA, the WSBA's willingness to interview a hearing officer for the position of disciplinary counsel while the hearing officer is presiding over an ongoing case, and what role Killian's training, or lack thereof, had in her decision to not disclose her effort to obtain employment with the WSBA while serving as a hearing officer. The WSBA opposed a request to depose Killian. Danielson signed an order quashing the December 14, 2006 subpoena *deuces tecum* and

**COMPLAINT - PAGE 45**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

disallowed Killian's deposition. Other than some greatly redacted sheets of paper, all discovery was disallowed by James Danielson.

193.  During his prosecution of Marshall, Danielson identified with and was an advocate for the WSBA, sending letters on WSBA letterhead, the same letterhead disciplinary counsel used, issuing orders on WSBA pleading paper, the same pleading paper disciplinary counsel use, and thanking witnesses on behalf of the WSBA, not on behalf of all parties.  By appointing himself as hearing officer, after all preemptory dismissals were used, by denying the deposition of WSBA personnel and Killian and by precluding the discovery of other instances where Killian served as hearing officer, through the issuance of a protective order, he in effect insulated Killian, disciplinary counsel and the WSBA from the rigors of constitutional impartiality and fairness. He also issued an order, directing the parties to not discuss Killian's actions with third parties and his refusal to grant Marshall's motion to vacate Killian's order allowing the filing of the WSBA's First Amended Complaint and other orders, allowed the prejudicial effect of Killian's conflict of interest and unconstitutional actions to go uncured.  All of these actions were an attempt to corrupt the legal process and were therefore predicate acts under RICO.

194.  Both Scannell and King filed detailed responses to Review Committee IV, detailing the problems with common counsel, ex-parte contacts and conflict of interest.

195.  On January 5, 2007, this WSBA review committee ordered Scannell and King to hearing on the charges presented by Busby relating to the investigation.  There was only two persons on the review committee instead of three as required by the ELC.

196.  On January 16, 2007, King objected to the absence of the citizen member on the committee and the apparent violation of not being charged by a three person review committee.

197.  Nothing in the rules indicates that 2 constitutes a quorum, and the review committees do not follow Robert's Rules of Order or any other parliamentarian system when conducting meetings.

**COMPLAINT - PAGE 46**

198.  As a result, King argued that the remaining trials that would ensue were void because he and Scannell had not been legitimately charged.

199.  Any similar argument by Scannell would have been futile.

200.  On February 7, 2007, the Chairman of the Disciplinary Board denied King's motion to vacate on the basis that two members were not considered a quorum in WSBA case no. 05-00854.

201.  On February 14, 2007, King filed a motion for reconsideration on the quorum issue.

202.  On February 20, 2007, the Chairman of the Disciplinary Board denied King's motion to vacate on the basis that two members were not considered a quorum.

203.  The hearing on the Marshall case was held on February 20-22 and 26-27, 2007. Neither Mr. nor Mrs. Harris nor Mr. nor Mrs. Rheubottom testified.

204.  Part of the process of holding sham trials, where results are predetermined on the basis of no evidence is to have the "court" mail out its decision.  The act of mailing a corrupt decisions to the parties was mail fraud and a predicate offense under RICO.

205.  On February 23, 2007 King appealed to the full disciplinary board on the quorum issue.

206.  Beginning on March 28, 2007, and continuing the present time, the defendants began having undisclosed ex parte contacts between disciplinary counsel, the Disciplinary Board, the Board of Governors and members of the Washington State Supreme Court.

207.  In Scannell's case alone there were over 300 undisclosed ex parte contacts.

208.  During the trial, Danielson met with members of the Washington State Supreme Court, the Disciplinary Counsel's Office, and the WSBA who was one of parties.  These meetings occurred as part of his membership on a Board of Governor's task force that was responding to the negative report issued by the American Bar Association.  The existence of these meeting were illegal ex parte contacts that were an attempt to corrupt the legal process by

**COMPLAINT - PAGE 47**

influencing judges and members of the Disciplinary Board to punish Marshall for speaking out against the enterprise. As such, they were predicate acts under RICO.

209. Specifically, on March 28, 2007, on the very night before defendant Danielson issued his decision, in the Marshall case, a meeting of the discipline committee task force #2 of the Board of Governors was held in which Danielson was a member. While defendant Danielson was not present, he was immediately notified of the results of the meeting by e-mail. Included in this meeting were two members of the Board of Governors and one member of the Disciplinary Counsel's Office. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

210. Also, on March 28, 2007, a meeting of the Discipline Committee Task Force #1 of the Board of Governors was held. Defendant Supreme Court Justice Susan Owens was a member of the committee, and was not present, but was notified of the results of the meeting by e-mail. Also present was a representative of the Disciplinary Counsel's Office and members of the Board of Governors. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

211. In that the WSBA hearing officer Danielson made findings of fact not alleged in the WSBA complaint, entered conclusions of law and made recommendations based upon those findings of fact, Marshall was deprived of his right to due process of law:[3]

---

[3] "An attorney has a cognizable due process right to be notified of the clear and specific charges and to be afforded an opportunity to anticipate, prepare, and present a defense." **In re Disciplinary Proceeding Against Romero**, 152 Wn.2d 124, 136-37, 94 P.3d 939 (2004).

**COMPLAINT - PAGE 48**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

212. The decision by Danielson had nothing to do with evidence or based on any legal principles. Instead it was a fraudulently issued decision whose sole purpose was to punish Marshall for speaking out against the enterprise, to discriminate against him on the basis of his race, and to serve as a warning to other attorneys what would happen to them if they did not cooperate and pay homage to the protection racketeering enterprise. It was sent through the mail and fraudulently portrayed as some kind of legitimate legal decision, even thought the results were predetermined by a corrupt judiciary who violated their own code of judicial conduct in order to pressure the hearing examiner to do the dirty work of the enterprise. By fraudulently issuing its corrupt decision without due process and in violation of the constitutional rights of the Marshall and then using the mail system to accomplish its corrupt ends, defendant Danielson committed a predicate act of mail fraud, and extortion under RICO.

213. The decision issued by Danielson included the use of a selection procedure, that has an adverse impact on minorities. This selection procedure is to allow the WSBA act as a complainant and be given unbridled discretion in conducting its prosecution including using ex parte contacts and other illicit methods to influence judges, while extorting cooperation from attorneys who do not pay homage to the enterprise. It has an adverse impact on minorities without a legitimate business related purpose and therefore constitutes racial discrimination under Title VII. In addition, Marshall can demonstrate that the WSBA's actions constitute disparate treatment compared to Caucasion attorneys with an intent to discriminate and therefore also constitutes racial discrimination under Title VII. The act of using racial discriminatory acts against Marshall also constituted an attempt to steer the market for attorneys against Afro-American attorneys and sole practitioners.

214. After he issued his corrupt decision, James Danielson and other members of the enterprise continued their corrupt methodology of having undisclosed ex parte contacts among

**COMPLAINT - PAGE 49**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

themselves to ensure that the decision of Danielson would be upheld by his fellow co-conspirators in the enterprise.

215. . For example on April 3, 2007, a meeting of the Discipline Committee Task Force #1 of the Board of Governors were held. Defendant Supreme Court Justice Susan Owens was a member of the committee, and was present. Also present was a representative of the Disciplinary Counsel's Office and members of the Board of Governors. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

216. On April 18, 2007, members of Task Force #1 of the Board of Governors met. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

217. On April 20, 2007, members of Task Force #2 of the Board of Governors met. This included two members of the Board of Governors and one member of the Disciplinary Counsel's Office. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

218. On May 8, 2007, King was charged by disciplinary counsel, in part for objecting to his loss of attorney client privilege and for objecting to the subpoena.

219. On May 9, 2007 members of Task Force #1 of the Board of Governors met. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

220. On May 10, 2007 the Washington State Supreme Court suspended Bradley Marshall for 18 months. That case is reported in *In re Disciplinary Proceeding Against Marshall* [No.

**COMPLAINT - PAGE 50**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

200, 302-8], 160 Wn.2d 317, 157 P.3d 859 (2007).  In issuing their May 2007 suspension the Defendants practiced racial discrimination by both disparate treatment, retaliation and by adverse impact.  They charged the Plaintiff knowing that there were similarly situated Caucasian lawyers that they did not charge.  At least two of the comparators were on the same case as Mr. Marshall. The Defendants did this with the intent to discriminate against Marshall on the basis of race. Another comparator was an attorney that had close associations with the WSBA as a hearing officer.  The Defendants also utilized policies and procedures that had an adverse impact on African Americans, with no justifiable business reason that could not be achieved by a policy that does not have a discriminatory impact or a greatly reduced discriminatory impact.

221.  On May 14, 2007, members of Task Force #3 of the Board of Governors met. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

222.  On May 23, 2007, Danielson met with defendant McMonagle and Stan Sebastion, Bob Weldon, Doug Lawerence and Wiitala. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

223.  On May 25, 2007, WSBA Chief Hearing Officer Danielson appointed defendant Schoeggl as hearing officer in the King Case.

224.  On May 30, 2007, Scott Busby charged Scannell with misconduct based upon the review committee order of January 5, 2007.

225.  Scannell was primarily charged because of his insistence on preserving the right of King to attorney client privilege and for asserting that the chairman of the board did not have the right to act on behalf of the rest of the Disciplinary Board.

**COMPLAINT - PAGE 51**

226.  Charges of this nature had never been filed against an attorney in the history of Washington State Bar Association's disciplinary system.  They were an attempt to extort cooperation from Scannell for the activities of the protection racketeering enterprise, a violation of the Hobbs act for extortion and therefore a predicate act under RICO.

227.  On June 4, 2007, defendant Washington State Supreme Court Justice Matson met with Defendant Busby and another member of the ODC.  These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

228.  On June 11, 2007, Chief Hearing Officer James Danielson (hereinafter referred to as Danielson) appointed a hearing officer in the Scannell case.

229.  Neither before nor during this appointment did Danielson disclose that he had been having ex parte contacts with disciplinary counsel Busby, nor did he disclose he had been having ex parte contacts with opposing party, the WSBA.

230.  He also did not disclose the substance of the conversations.

231.  He also did not disclose that he was paid by the WSBA, who was one of the parties, nor did he disclose that he had been hired through a process which had an inherent conflict of interest because part of his salary was kicked backed to his law partner who was president of the WSBA.

232.  On June 15, 2007, Scannell filed a motion to disqualify the WSBA hearing officer Mary Weshler as well as the entire Disciplinary Board.

233.  Scannell brought this motion for cause because the hearing officer was not following ELC 10.12 for scheduling the hearing.  The rule explicitly calls for motion to be filed before a hearing can be set, but Weshler attempted to set a hearing without a motion.

234.  On June 20, 2007, members of the Disciplinary Committee of the Board of Governors met.  These were undisclosed ex parte contacts that attempted to fraudulently corrupt

**COMPLAINT - PAGE 52**

the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

235.  On June 22, 2007, Scannell filed an alternative motion to disqualify the hearing officer assigned to his case without cause, in the event the Chief Hearing Officer did not rule in his favor on the motion to disqualify for cause.

236.  On June 25, 2007, defendant Danielson, without ruling on the motion to disqualify the hearing officer for cause, removed the hearing officer without cause, claiming Scannell had now used his only pre-emptory challenge.

237.  On that same date, defendant Danielson, as he had in the Marshall case, appointed himself as a hearing officer.

238.  On July 6, 2007, Scannell brought a motion to disqualify the entire Disciplinary Board, as well as the Chief Hearing Officer, as they were witnesses in the case and the Chief Hearing Officer had deprived Scannell of his right to exercise a pre-emptory challenge.

239.  He also sought to appeal the Chief Hearing Officer's previous rulings.

240.  On July 10, 2007, defendant Danielson formalized his opinion in the Scannell case where he refused to rule on the motion to disqualify the hearing officer for cause.

241.  On July 18, 2007, members of the Disciplinary Committee of the Board of Governors, including Disciplinary Board Counsel Shankland, disciplinary counsel Ende, and WSBA Board of Governors Bastian, Wiitala, Doug Lawerence, Weldon, Mungia, and Littlewood met.  These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

242.  During July of 2007 defendants Gail McMonagle, Larry Kuznetz, Amanda Elizabeth Lee, David Heller, Brian Romas, Zachary Mosner, Thomas Cena, Joni Dickinson Mina, Thomas Andrews, Tamara Darst, Susan B. Madden, Seth Fine, William J. Carlson,

**COMPLAINT - PAGE 53**

Clementine Hollingsworth, and Julie Shankland and the hearing officer in the King case, David

Martin Schoeggl, held meetings with defendant Busby and hired common counsel Robert

Weldon to represent them in King County case # 06-2-33100-1 SEA.

243. The retaining of common counsel and subsequent discussions were ex parte contacts

forbidden by Code of Judicial Conduct 1, 2(A), 3A(4), RPC 3.5b and ELC 2.6(e)(1)(d) and

violated ethics prohibitions for Washington judges for having common counsel with one of the

parties appearing before them.

244. . The defendants WSBA Disciplinary Board, McMonagle and David Martin

Schoeggl then prejudged the case on July 24, 2007 by authorizing their retained counsel to enter

briefing on a motion to dismiss that stated that none of John Scannell or Paul King's grievances

had any basis in law or fact.

245. They raised a number of other arguments, including the argument that the

defendants had failed to include Washington State Supreme Court members as defendants.

246. The hiring of common counsel and subsequent discussions were ex parte contacts

that attempted to fraudulently corrupt the legal process by influencing judges and members of the

Disciplinary Board and as such were predicate acts under RICO.

247. Scannell and King were denied by the King County Superior Court in case # 06-2-

33100-1 SEA for lack of jurisdiction on August 8, 2007. In his ruling King County Superior

Court presiding Judge Erlick at no point considered Scannell or King's arguments frivolous,

stating he understood their arguments and they were debatable, but nonetheless considered them

mistaken.

248. On August 15, 2007, members of the Disciplinary Committee of the Board of

Governors met. These were undisclosed ex parte contacts that attempted to fraudulently corrupt

**COMPLAINT - PAGE 54**

the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

249.. On September 19, 2007, members of the Disciplinary Committee of the Board of Governors, including Disciplinary Counsel Ende and Board of Governor members Bastian, Doug Lawerence, Weldon, Mungia, and Littlewood met. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

250. During this meeting members of the committee met with each other to discuss King's issue that three board members were required charge a member with misconduct, and decided among themselves to say it was two.

251. King was not notified, nor were his arguments discussed.

252. Since Weldon was the common counsel in the King-Scannell lawsuit for McMonagle, Shoeggl, the Disciplinary board and Busby, this provided another level of ex parte contacts.

253. On October 1, 2007 defendants Larry J. Kuznetz, William J. Carlson, Thomas Cena, Frederick M. Meyers, Brian Romas, Thomas Andrews, Carrie M. Coppinger, Susan B. Madden, Tamara J. Milligan-Darst, Norma L. Ureña, Norris Hazelton, Seth Fine, Shea C. Meehan, Melinda Anderson, Julie Shankland began serving as members of the Disciplinary Board for the calendar year of October 1, 2007 to September 30, 2008. For the next year they met with Scott Busby, Disciplinary counsel in violation of the ethics statute and the ELC. These were ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

254. On October 7, 2007, members of the Disciplinary Committee of the Board of Governors, including Disciplinary Counsel Ende, Disciplinary Board Counsel Shankland and Board of Governor members Doug Lawerence, Weldon, Wiitala, and Littlewood met. These

**COMPLAINT - PAGE 55**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

255.  On November 14, 2007, members of the Disciplinary Committee of the Board of Governors, including Disciplinary Board Counsel Shankland, Defendant Danielson and Board of Governor members Doug Lawerence, Weldon, Wiitala, and Littlewood met.  These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

255. The Disciplinary Board upheld the disbarment recommendation of Marshall on October and November.  Between November 14, 2007 and September 8, 2007, by information and belief, various members of the enterprise met and conspired among themselves to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.  On September 8, 2007, the WSBA Discipline Committee issued their "final report".  In this "final report" the committees declared that the criticisms of the ABA were, for the most part, unjustified, and only offered a few meaningless token reforms.  The committee used the mail to issue their "final report" which was an attempt to cover for the fraudulent conduct of members of the enterprise so that the enterprise could continue its protection racketeering activities.  This is mail fraud and a predicate offense under RICO.

256.  Beginning on or about November 2008, the individual defendants again began making undisclosed ex parte contacts, this time for the purpose of amending the ELC's in response to the report of the American Bar Association.  The name of the committee was the "ELC Drafting Task Force."  On November 20, 2008, defendant Carpenter, attended a meeting with defendant Busby and disciplinary counsel Beitel, Disciplinary Board member Fine,

**COMPLAINT - PAGE 56**

Defendant Danielson, and office of General Counsel Turner.  Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what was going on. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

257.  On March 11, 2008, plaintiff King brought a motion for stay pending resolution of grievance filed alleging conflict of interest of hearing officer having common counsel with disciplinary counsel and prejudging the case.

258.  On March 11, 2008, hearing officer David Martin Schoeggl refused King's motion for a stay.

259.  On March 19, 2008 and on March 20, 2008, plaintiff King filed for recusal of the hearing officer in his case for having common counsel and ex parte contacts with the ODC.

260.  On March 21, 2008, the disciplinary chair denied plaintiff King's motion for recusal.

261.  On April 14, 2008, defendant Schoeggl denied motion for recusal.

262.  On April 16, 2008, plaintiff King appealed denial of motions for recusal to full board.

263.  On April 25, 2008, William Carlson, acting as Vice Chair of the Disciplinary Board denied plaintiff King's appeal of the denial of motions for recusal.

264.  King's trial began on April 28, 2008.

265.  On September 19, 2008, hearing officer Schoeggl recommended discipline in the King case.

**COMPLAINT - PAGE 57**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

266. Part of his decision relied on enhanced penalties for King for challenging the misconduct of the Disciplinary Board and the hearing officer and challenging the subpoenas in King County Superior Court.

267. Beginning on or about November 2008, Busby began making undisclosed ex parte contacts, this time under the alleged purpose of amending the ELC's. The name of the committee was the "ELC Drafting Task Force."

268. These meetings were organized as private meetings of a committee of the WSBA.

269. A representative of the Washington State Supreme Court was apparently invited to attend along with the Clerk of the Supreme Court.

270. Scannell's trial began on December 1, 2008.

271. On December 16, 2008, defendant Busby filed more charges against Paul King.

272. On January 7, 2009, plaintiff Scannell filed an answer on behalf of King to the December 16, 2008 complaint.

273. On February 2, 2009, the Disciplinary Board upheld the decision of the hearing officer in the King case.

274. In its decision the Disciplinary Board issued enhanced penalties for King for challenging the misconduct of the Disciplinary Board and the hearing officer and challenging the subpoenas in King County Superior Court.

275. On February 3, 2009, the hearing officer in the Scannell case issued findings and proposed order proposing two year suspension..

276. On February 19, 2009, plaintiff King filed a timely notice of appeal to the Washington State Supreme Court.

276. On March 12, 2009, defendant Carpenter, attended a meeting with defendant Busby and Disciplinary counsel Beitel, Disciplinary Board member Urina, Defendant Danielson, and

**COMPLAINT - PAGE 58**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

office of General Counsel Turner. Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what was occurring. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

277. The King County Superior Court's decision in case # 06-2-33100-1 SEA to dismiss Scannell and King's suit for lack of jurisdiction was upheld by the Washington State Court of Appeals on April 10, 2009

278. On May 12, 2009, plaintiff Scannell provided a more detailed defense to the December 16 2008 complaint against King by an amended answer offering an additional defense involving the subject of Alford pleas. King contended that existing law would allow him to litigate the merits of his claim.

279. On or about May 14, 2009, Plaintiff Marshall appeared before the Washington State Supreme Court. Neither before nor during this hearing did individual members of the Washington State Supreme Court disclose that they had been having ex parte contacts with opposing disciplinary counsel nor did they disclose they had been having ex parte contacts with opposing party, the WSBA. They also did not disclose the substance of the conversations. In particular, co-conspirator Matson did not divulge that she had met regularly with disciplinary counsel Busby for over two years. Furthermore co-conspirators Fairhurst and Chambers were both past presidents of the Washington State Bar Association, who was a party and complainant in the Marshall case. As past president they would have been intimately familiar with the political makeup of the Washington State Bar Association. By not divulging these ex parte contacts they denied the plaintiff Bradley Marshall due process of law. The purpose of the failure to disclose was to discriminate against plaintiff Bradley Marshall on the basis of race and

**COMPLAINT - PAGE 59**

to corrupt the judicial process and to ensure the continued existence of the protection racketeering enterprise.  As such, it was a predicate offense under RICO and discrimination in violation of Title VII.

280.  On June 10, 2009, the Washington State Supreme Court issued an order on the King case upholding the Disciplinary Board order.

281.  In its decision the Washington State Supreme Court did not rule on the merits of the disqualification issue, claiming that King had not properly authenticated the exhibits in King County Case # 06-2-33100-1 SEA.

282.  In its decision the Washington State Supreme Court  issued enhanced penalties for King for challenging the misconduct of the Disciplinary Board and the hearing officer and challenging the subpoenas in King County Superior Court.

283.  On June 30, 2009, plaintiff King filed a timely motion for reconsideration, authenticating the exhibits in question.

284.  Defendant Carpenter never filed the motion for reconsideration in a timely fashion.

285.  The Washington State Supreme Court never ruled on the motion for reconsideration in the King case.

286.  On July 22, 2009, defendant Carpenter, attended a meeting with defendant Busby and Disciplinary counsel Beitel, Disciplinary Board member Urina, Defendant Danielson, and office of General Counsel Turner.  Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what was going on.

287.  For Scannell and King, these were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

**COMPLAINT - PAGE 60**

288.. At the meeting, materials were distributed to the various participants and eventually were circulated to all the members of the enterprise. During this discussion, the Disciplinary Counsel's Office made a damaging admission that the rules do not clearly address the issue as to who was authorized to rule on motions during the investigative stage. This was in direct contradiction to the representations the disciplinary counsel's office made in the Scannell case, both in the disciplinary hearings and in the civil case that was filed in the King County Superior Court. In those cases, the disciplinary counsel charged that Scannell was "frivolous" for arguing the Chairman of the Disciplinary Board had no authority to rule on his motion to terminate the deposition.

289. Among the materials distributed to the various participants at the July 22, 2009 meeting was a proposal to redefine conviction in ELC 7.1 to include "Alford" pleas. This would prevent bar complaint defendants from using Alford pleas as a reason to fully litigate a defense to a bar complaint.

290. This was an undisclosed ex parte contact in King's case.

291. In August of 2009, Scott Busby wrote on behalf of the WSBA before the Washington State Supreme Court.

> The Association further requests that the Court address the issues presented here when [the court] issues it published opinion in this case to give guidance to other respondent lawyers who believe they can thwart a disciplinary proceeding merely by filing a lawsuit against the Association, the Supreme Court, or its members.

292. Mr. Marshall was not charged with filing a frivolous lawsuit as part of the disbarment proceedings. This is clear intent on the part of Mr. Busby and the Bar Association as a whole, to retaliate against Mr. Marshall and others as well as submit an improper "Send a message" argument to the decision-makers  See *State v. Powell* 62 Wn. App. 914, 816 P.2d 86 (1991), review denied, 118 Wn.2d 1013 (1992).

**COMPLAINT - PAGE 61**

293.  This was a continuation of the extortionate behavior made by both Busby and the rest of the disciplinary counsel's office, to retaliate and extort concessions from Scannell, Marshall, King and other like them, who oppose the activities of the protection racket enterprise. The failure of the Washington State Supreme Court to sanction or reprimand Busby for his behavior demonstrates a failure to supervise and represents collusion by the rest of the members of the enterprise to support the activities of the protection racket enterprise.  As such it is a violation of the Hobbs Act (18 U.S.C. §1951) and a predicate offense under RICO.

294.  On September 1, 2009, the Disciplinary Board partially reversed the findings of the Hearing Officer in the Scannell case, instead recommending disbarment.

295.  This decision was a enhanced penalty for challenging the misconduct of the disciplinary board and filing the lawsuit is King County Superior Court.

296.  On September 4, 2009, Chairman of Task Force B, Seth Fine, wrote to the Chair of the ELC task force, in another undisclosed ex parte contact, admitting the following:

> ODC is authorized to demand information from a lawyer. There is no procedure
> for reviewing such demands. If a lawyer receives a demand that he or she consider
> improper or excessive, the lawyer has essentially two alternatives. The lawyer can
> provide the demanded information notwithstanding that objection. Or the lawyer
> can refuse to provide the information, thereby subjecting himself or herself to
> possible interim suspension or additional disciplinary charges…"

297.  This was an undisclosed ex parte contact with the decision-makers and ODC over a substantive issue in both the Scannell and King appeals.

298.  Seth Fine, a prosecutor for Snohomish county, was the Chair of the Disciplinary Board from October 1, 2009 until September 30, 2010.

299.  Seth Fine's memo of September 4, 2009 along with the ODC memo of June 26, 2009 were in direct contradiction to the representations the disciplinary counsel's office made in the Scannell case.  According to paragraph 76 of the Scannell charging complaint, his motion

**COMPLAINT - PAGE 62**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

allegation that there was no authority for the chairman to rule on a protective order was "frivolous".

300.  This also contradicted the briefing in the Scannell-King civil case, where the WSBA alleged that Scannell's and King's argument that there was no authority for the Chairman to rule on the motion had "no basis in law or fact."

301.  On September 10, 2009, defendant Busby and disciplinary counsel Beitel, Disciplinary Board members Urina and Fine, and defendant Danielson met.  These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

302.  On September 29, 2009, Scannell filed a timely notice of appeal of the September 1, 2009 recommendation to discipline him.

303.  The King County Superior Court's decision in case # 06-2-33100-1 SEA to dismiss Scannell and King's suit for lack of jurisdiction was upheld by the Washington State Supreme Court on September 30, 2009.

304.  The King County Superior Court's decision in case # 06-2-33100-1 SEA to dismiss Scannell and King's suit for lack of jurisdiction was upheld by the Washington State Supreme Court on September 30, 2009.

305.  On October 5, 2009, plaintiff Scannell timely filed a notice of appeal to the Washington State Supreme Court.

306.  A mandate was issued on November 4, 2009 on Court of Appeals case no. 60623-9-I directed to King County Superior Court in this case.

307.  This mandate has yet to be acted upon.

308.  Scannell attempted to get the court to address the issue of whether attorneys had a right to be notified of ex parte depositions failed when he filed a petition as an original

**COMPLAINT - PAGE 63**

proceeding to resolve the issues on or about November 4, 2009.  His petition was in response to a petition to have him temporarily suspended.

309.  On November 5, 2009, defendant Carpenter, attended a meeting with defendant Busby and Disciplinary counsels Beitel and Ende, Disciplinary Board member Fine, Defendant Danielson, and office of General Counsel Turner.  Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what was occurring.  These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

310.  On November 13, 2009, Scannell brought a motion to disqualify Justice Fairhurst because of her ties to Gregoire while working in the attorney general's office.

311.  At the hearing, Fairhurst refused to disqualify herself.

312.  Neither before nor during this hearing did individual members of the Washington State Supreme Court disclose that they had been having ex parte contacts with opposing disciplinary counsel nor did they disclose they had been having ex parte contacts with opposing party, the WSBA.  They also did not disclose the substance of the conversations which included the most important issues raised by the appeal.

313.  In particular, Justice Matson did not divulge that she had met regularly with disciplinary counsel Busby for over two years.

314.  Both Justice Olsen and Justice Matson did not disclose that they had met with members of the WSBA, the WSBA Disciplinary Board, and members of the ODC for two years.

315.  The other members of the Supreme Court did not disclose that they had sent a representative to the meetings for another two years.

**COMPLAINT - PAGE 64**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

316.  Furthermore defendants Fairhurst and Chambers were both past presidents of the Washington State Bar Association, who was a party and complainant in the Scannell case.

317.  As past presidents they would have been intimately familiar with the political makeup of the bar association.

318.  Justices Fairhurst and Justice Chambers did not disclose their past relationship to one of the parties, the WSBA.

319.  Justice Fairhurst did not disqualify herself in response to the Scannell motion to disqualify.

320.  Also at the November 16, 2009 meeting, Scannell complained that the court did not have authority to prosecute him under Washington law because of ELC 8.5, which requires grievances based upon conduct before another tribunal have to be investigated and tried in the law of the jurisdiction the other tribunal.

By not disclosing their relationships to the complainant WSBA and by not disclosing their ex parte relationships, said defendants denied Scannell due process of law by having his case heard by a disinterested and neutral tribunal.  The purpose of the failure was to extort concessions from  plaintiff Scannell for his opposition to the protection racketeering enterprise As such, it was a predicate offense under RICO and a violation of his first amendment rights to free speech.

321.  On November 24, 2009, the Supreme Court suspended Scannell pending final resolution of his case.  The court did so without considering whether the charges against him had any merit and therefore suspended him without due process.

322.  On November 30, Scannell brought motion for reconsideration which was denied.323.  On or about December 24th, 2009 Evangeline Zandt filed a bar complaint (WSBA File #09-01876) against Henry Judson III alleging that attorney Henry Judson III was violating

**COMPLAINT - PAGE 65**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

RPC 1.7 by attempting to exploit a conflict of interest to transfer assets from her husband's guardianship to another guardianship.

324.  On January 14, 2010, defendant Carpenter, attended a meeting with defendant Busby and Disciplinary Counsel Beitel, Disciplinary Board member Urina, and Fine, Defendant Danielson, and office of General Counsel Turner.  Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what was occurring at the meetings . These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

325.  On January 15, 2010, Henry Judson III responded to the Zandt grievance (WSBA file #09-01876) by generally denying the allegation without supplying specifics.

326.  The WSBA defaulted after service of a summons and petition on Scannell's November 4, 2009 action.  Scannell filed a motion for default on or about February 26, 2010.

327.  Washington State  Supreme Court Clerk Carpenter refused to process the motion on March 1, 2010

328.  Supreme Court Clerk Carpenter refused to process the mandamus and prohibition actions on March 1, 2010

329.  On March 3, 2010, Evangeline Zandt, responding to a request for additional information by the bar in WSBA file #09-01876, sent over a hundred pages of documentation detailing the conflict of interest and providing canceled checks showing that transfer of disputed funds could be imminent..

**COMPLAINT - PAGE 66**

330. On March 10, 2010, defendant Carpenter, attended a meeting with defendant Busby and Disciplinary counsels Beitel and Ende, Disciplinary Board member Fine, Defendant Danielson, and office of General Counsel Turner. Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what was occurringat the meetings. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

331. Scannell filed an objection to the Clerk's Ruling on March 31, 2010 using RAP 17.7.

An aggrieved person may object to a ruling of a commissioner or clerk, including transfer of the case to the Court of Appeals under rule 17.2(c), only by a motion to modify the ruling directed to the judges of the court served by the commissioner or clerk. The motion to modify the ruling must be served on all persons entitled to notice of the original motion and filed in the appellate court not later than 30 days after the ruling is filed. A motion to the Justices in the Supreme Court will be decided by a panel of five Justices unless the court directs a hearing by the court en banc.

332. Carpenter refused to process objection on April 5, 2010.

333. Any further efforts to appeal would be futile.

334. On April 8, 2010, defendant Carpenter, attended a meeting with defendant Busby and Disciplinary counsel Beitel and Ende, Disciplinary Board member Fine and Shanklund, Defendant Danielson, and office of General Counsel Turner. Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what was occurring at the meetings. These were

**COMPLAINT - PAGE 67**

undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

335.  On June 10, 2010, defendant Carpenter, attended a meeting with defendant Busby and disciplinary counsels Beitel and Ende, Disciplinary Board members Fine, Urina and Shanklund, Defendant Danielson, and office of General Counsel Turner.

336.  Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what occurred during the meeting.

337.  At this meeting, the Chairman of the Disciplinary Board, Seth Fine, proposed a new ELC 5.5, which "would allow" an attorney to raise confidentiality concerns during an investigative subpoena.

338.  One purpose of this change would be to take "discipline for non-cooperation off the table" where an attorney tried to raise confidentiality concerns.

339.  This was an undisclosed ex parte contact over a material issue that was pending before the Washington State Supreme Court in the Scannell and King cases.  These were attempts to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

340.  Scannell was contending he was being disciplined for non-cooperation, because he tried to raise confidentiality concerns over attorney client privileged information for an attorney he represented before the Disciplinary Board.  That is, he was demanding that his client be notified of the deposition because, under ELC 5.4, Scannell could not raise it for him.  In the three years the Scannell case had been litigated, the disciplinary counsel had ignored this issue in his briefing contending only that Scannell's arguments were frivolous.

**COMPLAINT - PAGE 68**

341. Paul King was also, among other issues, contending that Scannell had to be notified because he was also a party to the deposition since the investigation was for the same issues.

342. King attempted to get the court to address the issue of the ex parte deposition of Mark Maurin in that case.

343. Scannell attempted to get the Washington State Supreme Court to address the issue of joint counsel and ex parte contacts between disciplinary counsel and decision-makers in his disciplinary proceedings. The Washington State Supreme court refused to address this issue other than saying the ex parte contacts "arose" from Scannell's suit. There was no explanation as to why joint counsel was used.

344. Finally, Scannell attempted to get the Washington State Supreme Court to address the issue of attempting to protect the right of King to counsel and attorney client privilege in his disciplinary action. The Washington State Supreme Court refused to deal with the issue.

345. On June 14, 2010, Plaintiff Scannell filed a Motion for Relief From Court Order or Judgment.

346. On June 21, 2010, the ODC in WSBA file #09-01877 dismissed Evangeline Zandt's grievance, claiming she had not responded to the requested information.

347. On June 29, 2010, Carpenter dismissed motion Scannell's motion without prejudice, pending filing of new motion.

348. On June 30, 2010, King filed a timely motion for reconsideration. To date, the Washington State Supreme Court has yet to rule on King's motion for reconsideration.

349. Evangeline Zandt subsequently notified the ODC supplying proof of service that she had supplied the information. However, the ODC did not further investigate the grievance.

350. On July 13, 2010, Plaintiff Scannell resubmitted Motion for Relief from Court Order or Judgment.

**COMPLAINT - PAGE 69**

351.  On July 22, 2010 Evangeline Zandt filed an appeal of the denial of the grievance and filed a bar complaint against the ODC for losing her paperwork.  To this date she has not received a response to either the appeal or the grievance.  The failure of the WSBA to investigate these grievances was a fraudulent attempt to corrupt the legal process and a predicate act under RICO.

352.  On July 28, 2010, Washington State Supreme Court Clerk Carpenter refused to process the Motion for Relief from court order or Judgment.

353.  On August 12, 2010, defendant Busby attended a meeting with disciplinary counsels Beitel and Cain, Disciplinary Board member Fine, Urina and Shanklund, Defendant Danielson, and office of General Counsel Turner.  Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what occurred at the meetings.  These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

354.  On August 27, 2010, Scannell objected to Carpenter's ruling of July 28, 2010.

355.  Washington State Supreme Court Clerk Carpenter refused to allow Scannell to appeal his refusal to process the petition under RAP 17.7 on September 9, 2010.

356.  Scannell was disciplined on September 9, 2010.

357.  As in the King case, the court made no ruling as to whether the Chairman of the Disciplinary Board had power to rule on the motion for protective order.  This was a necessary finding for the court to have to proceed to discipline him when there is an outstanding order for protection.

358.  The court refused to issue any findings as to how it had authority to prosecute Scannell and King under Washington law.

**COMPLAINT - PAGE 70**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

359.  In its decision the Washington State Supreme Court made new findings of fact that had no basis in the record.  These included the allegation Scannell had not attended the Matthew's deposition even though he clearly had.

360.  Since Scannell had attended the deposition there was no basis for finding him guilty of failing to cooperate in count 2 of the charges filed against him.

361.  The court made findings that his lawsuit in King County Superior Court case # 06-2-33100-1 SEA was frivolous even though he was never charged with that as misconduct and it was not a part of the record in his disciplinary appeal.

362.  The court made findings that Scannell improperly made an unwritten contract with a client, even though he was not charged with that and there was no argument on the issue throughout the proceedings.

363.  Scannell had not made a contract with Matthews.

364.  The court did not address the issue as to how it could prosecute Scannell using Washington law for conduct connected with a tribunal in Virginia.

365.  The court made no attempt to address the attorney client privilege issue, which was the central issue in the Washington State Supreme Court lawsuit, the disciplinary action against Scannell, and the present case.

3664.  On October 28, 2010, defendant Carpenter, attended a meeting with defendant Busby and disciplinary counsel Beitel and Ende, Disciplinary Board member Urina, Defendant Danielson, and office of General Counsel Turner.  Defendants Barbara Matson, Susan J. Owen, Gerry L. Alexander, Charles W. Johnson, Richard B. Sanders, Tom Chambers, Mary E. Fairhurst, James M. Johnson, and Debra L. Stephens sent a representative-agent to the meeting named Sullins who would keep them abreast of what was occurring at the meeting. These were undisclosed ex parte contacts that attempted to fraudulently corrupt the legal process by

**COMPLAINT - PAGE 71**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

influencing judges and members of the Disciplinary Board and as such were predicate acts under RICO.

367.  Meanwhile, the Disciplinary Board has refused to investigate Gregoire or her subordinates in any meaningful fashion, instead destroying all files connected with the grievance.

368.  The Washington State Supreme Court has denied any remedy for the ex parte contacts of the Supreme Court and for that of the Disciplinary Board as well as a remedy for the unconstitutional subpoenas.

369.  King's attempt to get the court to address this issue failed in **In re Disciplinary Proceeding Against King**, No. 200, 232 P.3d 1095, 168 Wash.2d 888 (Wash. 06/10/2010).

370..  Scannell's attempt to get the court to address this issue failed when he filed a petition to resolve the issues on or about November 4, 2009.

371. In early 2011, the Scannell that over 300 undisclosed ex parte contacts in had been made in his case alone.

372.  Scannell attempted to have the court to address this issue by filing a motion to recall the mandate on February 9, 2011.

373. Washington State Supreme Court Clerk Susan Carlson refused to process the motion in violation of RAP 12.9:

> (a) To Require Compliance With Decision. The appellate court may recall a mandate issued by it to determine if the trial court has complied with an earlier decision of the appellate court given in the same case. The question of compliance by the trial court may be raised by motion to recall the mandate, or by initiating a separate review of the lower court decision entered after issuance of the mandate. (b) To Correct Mistake or Remedy Fraud. The appellate court may recall a mandate or certificate of finality issued by it to correct an inadvertent mistake or to modify a decision obtained by the fraud of a party or counsel in the appellate court. (c) Time for Motion. The motion to recall the mandate or certificate of finality must be made within a reasonable time.

**COMPLAINT - PAGE 72**

374. She also refused to process the appeal of her order in violation of RAP 17.7:

An aggrieved person may object to a ruling of a commissioner or clerk, including transfer of the case to the Court of Appeals under rule 17.2(c), only by a motion to modify the ruling directed to the judges of the court served by the commissioner or clerk. The motion to modify the ruling must be served on all persons entitled to notice of the original motion and filed in the appellate court not later than 30 days after the ruling is filed. A motion to the Justices in the Supreme Court will be decided by a panel of five Justices unless the court directs a hearing by the court en banc.

375. Any other attempts to file motions with the court by King or Scannell would be futile.

376. On July 11, 2011, the Ninth Circuit Court of Appeals independently found that Plaintiff's were correct as to the in regard to ELC 4.7., in the following case. *In re: John R. Scannell*, No. 10-80024 (Ninth circuit 2011) found on page 33 of the decision that stated:

Scannell argued, correctly, that ELC 4.7 provided the Bar Association with a clear procedure for using the superior court to compel his attendance at a deposition, and that disciplinary counsel chose instead to contest Scannell's various motions and suits. The procedure under ELC 4.7 would have provided a show cause hearing, a determination whether Scannell's objections were in fact frivolous, and an opportunity to bring himself into compliance. There is no corresponding procedure to quash a subpoena, although Scannell's writ action was an attempt to fashion one"

377. Also arguments deemed frivolous and without merit by the WSBA were found by the Ninth Circuit Court of Appeals in *In re: John R. Scannell*, No. 10-80024 (Ninth circuit 2011) found on page 42 it was stated:

But the Task Force minutes...The minutes demonstrate that various representatives of the Bar Association took seriously issues that they argued were frivolous when Scannell presented them as a basis for challenging the investigation of the Rahrig matter.

**COMPLAINT - PAGE 73**

378. As vigorously stated and objected to Plaintiff Scannell was found guilty and punished for conduct for which he was not charged.  As stated and found In the Ninth Circuit Court of Appeals , *In re: John R. Scannell*,  No. 10-80024 (Ninth circuit 2011) on page 39-40.

> In addition, the Supreme Court's conclusion is clearly based on conduct outside that charged in the formal complaint: "Scannell has caused serious injury to the legal system by dragging out his disciplinary proceedings for five years." 239 P.3d at 341 (emphasis added). In context, then, uncharged behavior, including Scannell's allegedly "groundless" suit in superior court and his subsequent efforts to disqualify various hearing officers and Board members, appears to be part of the conduct the Supreme Court used to establish the presumptive sanction for the charged conduct. *See* ELC 10.3(a)(3) ("The formal complaint must state the respondent's acts or omissions in sufficient detail to inform the respondent of the nature of the allegations of misconduct.")

> and footnote 8:

> ABA Standard 9.22(c) allows evidence of a "pattern of misconduct" to serve as an aggravating factor, but the Supreme Court appears to have used Scannell's uncharged conduct to establish the presumptive sanction insofar as the pattern established "serious" harm

379. Also, since the decision, the plaintiff learned that defendant Tom Chambers and defendant Mary Fairhurst were former presidents of the Washington State Bar Association, who was the grievant in both Scannell's and King's disciplinary matters.  The plaintiff objects to their participation in his cases involving discipline and the WSBA.  Since the clerk's office has indicated that any further pleadings will not be filed, any attempt to get this issue before the Washington State Supreme Court would be futile.  There is no state remedy.

380.. Since the decision, the plaintiff has learned of several cases  where the bar association disciplinary counsel's has utilized a written policy of not prosecuting defense counsel for ineffective assistance of counsel unless there has been a judicial finding that such is the case. Since the only time there would be a judicial finding would be when an appeal overturns a conviction the likelihood of a bar prosecution for this very common offense would be practically

**COMPLAINT - PAGE 74**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

nil. This policy has an effect of steering disciplinary resources away from defense counsel and more toward sole practitioners. Since there is no effective remedy under the disciplinary system in Washington to appeal a failure to prosecute to the Washington State Supreme Court, this action and policy is in violation of the Sherman anti-trust act and there is no state remedy.

381. April 20, 2011, Matthew Little filed grievance against a Kitsap County defense attorneys Stephen King(King) (WSBA file #1100661), Michael Raya (Raya)(WSBA file #1100664), Eric Fong (Fong)(WSBA file #11-00665), and prosecutor Gina Buskirk(Buskirk).

382. Complaints against King alleged violations of RPC 3.3(a)(1)(4) in that he attempted to induce Little's wife to file a false declaration. King was also charged with advising Little he could take a certain course in order to satisfy the courts requirement of taking domestic violence treatment. After Little spent $250.00 and spent 27 hours in taking the course, the court ordered him to start over because it was the incorrect course.

383. Complaints against Raya and Fong alleged violations of RPC 1.4(a)(b) because they failed to disclose that his wife had stated in writings to the court that there was no domestic violence or assault in the case, when she was the complaining witness.

384. Complaints against Buskirk alleged violations of RPC 3.3(a)(1)(4) by making untrue statements to the court.

385. On April 25, 2011, the WSBA dismissed grievance against Raya and Fong on the grounds that their misconduct involved "professional judgment" and the bar does not reassess "professional judgment". The complaint against Buskirk was dismissed on the grounds her actions were not in violation of the RPC's. The complaint against King was dismissed with Little being told that when he claims ineffective assistance of counsel, they do not investigate it unless there is a judicial finding of impropriety.

386. On or about May 27, 2011, Michael Chiofar Gummo Bear filed grievances against John Cobb, a King County Prosecutor, (WSBA # )for contacting him without going through his

**COMPLAINT - PAGE 75**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

attorney of record John R. Scannell, claiming a violation of RPC 4.3 which prevents a lawyer from communicating directly with me about the subject of representation without the consent of the other attorney.

387. On or about May 28th, 2011, Michael Chiofar Gummo Bear filed a grievance against Patrick Oishi (WSBA file #11-00921) and Phillip K. Sorenson (WSBA file #11-00922) charging them with charging a criminal charge without basis in law or fact (RPC 3.1)

388. On or about June 16th, 2011, Michael Chiofar Gummo Bear filed a grievance against John Cummings (WSBA file #11-01019 ) charging him with obtaining a summons for a criminal charge without basis in law or fact (RPC 3.1).

389. On June 28, 2011 Matthew Little filed a grievance against defense attorney David LaCrosse(LaCrosse) (WSBA file #11-01079) alleging that Lacrosse had showed up at hearings unprepared and had done little, if any investigations in preparing his case for trial. .

390.. On June 30, 2011, in response to grievance filed against LaCrosse, the WSBA told Little that when he claims ineffective assistance of counsel, they do not investigate it unless there is a judicial finding of impropriety.

391. On August 1, 2011, the disciplinary counsel's office rejected Bear's grievances against Sorenson (WSBA file #11-00922) and Cummings(WSBA file #11-01019 ), claiming the prosecutions were in good faith.

392. Prior to August 2, 2011, Little filed a grievance (WSBA file #11-01454) against Charles W. Tibbits alleging ineffective assistance of counsel.

393. On August 2, 2011, the WSBA dismissed the Tibbets grievance(WSBA file #11-01454) and told Little that when he claims ineffective assistance of counsel, the WSBA does not investigate it unless there is a judicial finding of impropriety.

**COMPLAINT - PAGE 76**

394.  On August 2, 2011, the WSBA dismissed the Jeniece Lacross grievance, telling him that when charges ineffective assistance of counsel, the WSBA does not investigate it unless there is a judicial finding of impropriety.

395.  . On August 3, 2011, Matthew Little filed grievances against defense attorney Michelle Taylor(11-01309)

396.  On August 5, 2011, the WSBA dismissed the grievance against Michelle A. Taylor(11-01309), telling Little do not investigate it unless there is a judicial finding of impropriety.

397.  On August 15, 2011, the disciplinary counsel's office dismissed Bear's grievances against Patrick Oishi (WSBA file #11-00921), claiming the prosecution was in good faith.

398.  On or about August 25, 2011 Little filed a grievance against prosecutor Robert R. Davy (WSBA file: 11-01289), and appealed dismissals of the grievances against Janeice LaCrosse, (WSBA file: 11-01290), and Michelle Taylor (WSBA file: 11-01309.

399.  In the case of Davy, Little alleged violations of RPC 1.7(b)(2) (failure to get a written waiver before representing a client against a former client), RPC 3.8(b), (engaging in conversations with an unrepresented party without first informing him of right to counsel), RPC 3.8(a). (filing charge not supported by probable cause), all stemming from his representation of the City of Bremerton in doubling Little's bail at a time when the court would not provide Little a counsel in violation of his constitutional right to counsel in a criminal proceeding.

400. A review of the published decisions of the Washington State Supreme Court's decision reveal virtually no prosecutors are prosecuted for bar violations.  The disciplinary board has historically been dominated by lawyers from large firms, and prosecutors.  The plaintiff contends that there is an ad hoc policy of not bring disciplinary actions against large firms or prosecutors as a result.  Since there is no effective remedy under the disciplinary system in

**COMPLAINT - PAGE 77**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

Washington to appeal a failure to prosecute to the Washington State Supreme Court, this action and policy is in violation of the Sherman anti-trust act and there is no state remedy.

401.  A review of published cases reveals an almost exclusive focus on discipline on sole practitioners even though they comprise only 30% of attorneys.  This steering of discipline away from other firms is likewise a violation of the Sherman anti-trust act and there is no state remedy.

402.  On November 11, 2011, the Danielson Jefferson firm was fined approximately $300,000 for RPC violations in the United States District Court Western District of Washington in case #CV-11-023 JLQ, Kelly v. Public Utility District No. 2.  The Danielson Jefferson engaged in this unethical behavior because they knew that the aforementioned RICO enterprise would protect them from any repercussion through the WSBA disciplinary system.

## CAUSES OF ACTION

## CAUSE OF ACTION #1, WRIT OF PROHIBITION

402.  Plaintiff hereby incorporates and re-alleges as if fully set forth herein each and every allegation in paragraphs 1 through 401 as if fully set forth herein.

403.  Scott Busby has been conducting secret depositions without notifying parties and without adequate safeguards to protect attorney client privilege and due process required by Article I Section 3 of the Washington State Constitution and the Fourteenth Amendment.

404.  Scott Busby has failed to join necessary parties in conducting pre-charging depositions.

405.  ELC 5.5 is unconstitutional as it does not allow for protective orders to contest the validity of subpoenas because the parties are not given adequate notice, in violation of Article I Section 3 of the Washington State Constitution and the Fourteenth Amendment.

406.  ELC 5.5 is unconstitutional as it allows the Disciplinary counsel to conduct investigations which invade the private affairs of the petitioners  in violation of Article I Sections

**COMPLAINT - PAGE 78**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

Three and Seven of the Washington, and the Fourth and Fourteenth Amendments of the United States Constitution.

407.  ELC 5.5 is unconstitutional as it violates constitutional prohibitions against unreasonable searches and seizures set forth in article I, Sections 3 and 7 of the Washington Constitution and the fourth and fourteen amendment of the United States Constitution.

408.  The petitioners have no other plain speedy, or adequate remedy at law, and therefore seek a writ of prohibitions under the Writs Act, chapter 7.16 RCW.

## CAUSE OF ACTION #2, WRIT OF MANDAMUS

409  Petitioner re-alleges Paragraphs 1 through 408 of this complaint as if fully stated herein.

410.  As a result of the unlawful actions of Gail McMonagle the petitioner has been denied his right to have his motion to terminate or limit a deposition heard as allowed by the ELC 5.5(a) and CR 30.

411.  The petitioner has no other plain, speedy, or adequate remedy at law.

## CAUSE OF ACTION #3, PROTECTIVE ORDER UNDER ELC 5.5

412.  Petitioner re-alleges Paragraphs 1 through 411 of this Complaint as if fully stated herein.

413.  Petitioner seeks a protective order as allowed in ELC 5.5.

## CAUSE OF ACTION #4, INJUNCTION

414.  Plaintiff re-alleges Paragraphs 1 through 413 of this complaint as if fully stated herein.

415.  Scott Busby appears willing to conduct further deposition without due process.

416.  The plaintiff has no other plain, speedy, or adequate remedy at law and therefore seek injunctive relief under the equitable power of this Court provided by Article IV Section 6 of the Washington State Constitution.

**COMPLAINT - PAGE 79**

## CAUSE OF ACTION #5, DECLARATORY JUDGMENT

417.  Plaintiff re-alleges Paragraphs 1 through 416 of this complaint as if fully stated herein.

418.  The plaintiff has been subject to unconstitutional deposition without due process in violation of Article I Section 3 of the Washington State Constitution and the Fourteenth Amendment and applicable legislation and rules.

419.  The plaintiff has been subjected to unconstitutional invasions of his private affairs under Article I Section 7, of the Washington State Constitution, and the Fourth and Fourteenth Amendments of the United States Constitution.

420.  The plaintiff has been subjected to subpoenas without authority of law and has been subjected to charges without benefit of counsel or access to cross examination of any potential witnesses, resulting heightened charges against participants in the review committee process.

421.  In paying the witness fees, disciplinary counsel waived any right to contest the fees later.  Plaintiff Scannell was entitled to witness fees under Washington law and was not required to attend the deposition until the witness fees had been paid.

422. The Washington State Bar Association has used ELC 5.5 without having to establish good cause for issuing the subpoenas.

423.  ELC 5.5 as presently interpreted by the defendantss, constitutes an unlawful search and seizure in violation of Article I, Sections 3 and 7 of the Washington State Constitution and the Fourth and Fourteenth Amendments of the United States Constitution.

424.  Friedman's orders of Dec 14, 2005 and June 6, 2006 were void because they were issued without authority of law.

425. McMonagle's orders of  August 17, 2006 and September20, 2006, and September 21, 2006 were void because they were issued without authority of law.

**COMPLAINT - PAGE 80**

426.  Since Washington Court Rule 30 does not allow for enforcement of a subpoena while a protective order is pending, as since both the Disciplinary Board and the Washington State Supreme Court refused to rule on the protective order, all actions taken against Scannell and King after are null and void as they are attempts to enforce a subpoena for which a motion for a protective order has not been ruled upon.

427.  On October 26 ,2006, the Washington State Supreme Court ruled in the case of **In re Disciplinary Proceeding Against Sanders**, No. 200, 145 P.3d 1208, 159 Wash.2d 517 (Wash. 10/26/2006), that even a Washington State Supreme Court justice could not have any kind of ex parte contacts with potential parties in a case, even if the subject of the conversations were only general in nature and did not discuss the specifics of a particular case.

428.  Thus, all the contacts were in violation of the Code of Judicial Conduct 1, 2A, and 3A(4) the Rules of Professional Conduct 3.5b and ELC 2.6(e)(1)(d). These contacts deprived the plaintiff of due process of law under the Washington State Constitution.  That the actions of the individual members of the Washington State Supreme Court violated the Washington Code of Judicial Conduct 1 and 2A.

429.  Scott Busby, a disciplinary counsel for the Washington State Bar Association has conducted at least one pre-charging deposition investigating either John Scannell or his client Paul King without notifying either of them of the depositions.

430.  Scott Busby has attempted to conduct pre-charging depositions of John Scannell without notifying Paul King, even though potential charges against Paul King were being investigated.

431.  Scott Busby has indicated that he would ask attorney client privileged information and asserted that Scannell would not be able to assert attorney client privilege.

**COMPLAINT - PAGE 81**

432.  John Scannell has no way of determining whether Mr. King intended to waive any attorney client privileged communications and therefore needed Mr. King's presence in order to be allowed to assert attorney client privileged objections.

433.  Scott Busby indicated by his interpretation of the rules that Mr. King is not entitled to notice and therefore not entitled to attend the deposition.

434.  Thus the ELC became a way for the bar association to investigate attorneys who represent clients before the WSBA, forcing them to reveal attorney client privilege, and making it impossible for attorneys to get proper representation before the Disciplinary Board.

435.  John Scannell and Paul King attempted to file for protective orders on these depositions.  The motions were to have been considered under the ELC rules by either the chief hearing officer or the disciplinary committee as a whole.

436.  They have been denied this right on at least three occasions.

437.  Scott Busby has conducted secret depositions related to investigating Scannell and King without notice to either King or Scannell.

438.  Gail McMonagle has ruled on the latest motion herself instead of referring the motions to the correct persons.

439.  At the hearing of the review committee held on January 5, 2007, in the matter involving Paul King and John Scannell, one of the three committee members, the non lawyer member Hollingsworth, was not present.  Yet the other two members issued the Finding and Order of Review Committee IV.

440. King moved to vacate this Finding and Order of Review Committee IV.  Any similar motion by Plaintiff Scannell would have been futile.

441.  Gail McMonagle denied this motion to vacate without the signatures of at least six other members of the Disciplinary Board.

**COMPLAINT - PAGE 82**

442. King moved to vacate this order by Gail McMonagle denying his motion to vacate the Finding and Order of Review Committee.

443. As a matter of law, the prosecution of Scannell and King in those cases were void because the review committee never reviewed the results of the investigation as required by ELC 5.6 (c)(d) with a meeting that included all the members.

444.. When Scannell and King could not get the Disciplinary Board to properly respond, they filed suit in King County Superior Court.

445. Even though these charges were pending before the Disciplinary Board, the Disciplinary Board hired joint counsel with the prosecutor, who was defendant Busby. Defendant Schoggl, who was hearing officer in the King case, also hired joint counsel with the prosecutor, even though the King case was pending before him.

446. Without hearing from a single witness, or reading a single legal brief, the WSBA Disciplinary Board concluded that the petitioners grievances were without merit in law or fact.

447. When the plaintiff filed numerous motions to disqualify because of the above misconduct, the Disciplinary Board either ignored the motions or only gave them cursory consideration, almost as an afterthought. At no point did they refer these grievances to the conflicts review officer, even though it is a requirement of ELC 2.7.

448. In retaliation for the plaintiff protesting the misconduct of the Disciplinary Board, the Disciplinary Board voted to recommend disbarring the plaintiff.

449. Since they have mixed their roles in this fashion they no longer have any legislative, judicial, and prosecutorial immunity.

450. At the time these actions took place, the disciplinary board and disciplinary counsel only had immunity when their actions were in good faith under ELC 2.12(a):

> No cause of action accrues in favor of a respondent lawyer or any other person,
> arising from an investigation or proceeding under these rule against e Association,

**COMPLAINT - PAGE 83**

or its officers or agents (including but not limited to its staff, members of the Board of Governors, the Disciplinary Board, review committees, and hearing panels , hearing officers; disciplinary counsel, adjunct investigative counsel, adjunct review committee members; lawyers appointed under rule 7.7, 8.2(c)(2), or .3(d)(3); probation officers appointed under rule 13.8, or any other individual acting unde4r authority of these rules provided only that the Association or individual acted in good faith.

451.  The actions of the disciplinary counsel Busby, Chief Hearing Officer, hearing officer Schoeggl and the Disciplinary Board were not in good faith.

452.  By asserting plenary control the Washington State Supreme Court violated the concept of an independent judiciary which is a provision of both the Washington and United States Constitution.

453.  By not disclosing his connections with the WSBA including his contract with the WSBA and his ex parte contacts, defendant Danielson denied Scannell and King due process of law.

454.  By not disclosing that she had ex parte contacts with the disciplinary counsel and members of the WSBA and the WSBA disciplinary board over the issues raised in his case, Justice Matson denied King and Scannell due process of law.

455.  By not disclosing that she had ex parte contacts with the disciplinary counsel and members of the WSBA and the WSBA disciplinary board over the issues raised in his case, Justice Owens denied King and Scannell due process of law.

456.  By not disclosing he was a past president of the WSBA Justice Chambers denied the plaintiffs due process of law.

457.  By not disclosing she was a past president of the WSBA, Justice Fairhurst denied the plaintiffs due process of law.

458.  The Washington State Supreme Court has denied any remedy for the ex parte contacts of the Washington State Supreme Court and for that of the Disciplinary Board as well as a remedy for the unconstitutional subpoenas.  The court denied jurisdiction to the Washington

**COMPLAINT - PAGE 84**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

State Superior Court to decide these issues and declined to adjudicate these issues when Scannell filed a petition with the Washington State Supreme Court directly.

459.  By claiming Scannell had not attended a deposition without any basis in record the Court denied Scannell due process of law.

460.  By making findings that his lawsuit in King County Superior Court case # 06-2-33100-1 SEA was frivolous even though he was never charged with that as misconduct and it was not a part of the record in his disciplinary appeal the Washington State Supreme Court denied Scannell due process of law..

461.  By making findings that Scannell improperly made an unwritten contract with a client, even though he was not charged with that and there was no argument on the issue throughout the proceedings, the court denied Scannell due process of law.

462.  . That the Supreme Court of Washington had no authority to prosecute Scannell and King using Washington law and procedures for conduct that was connected with a tribunal in another jurisdiction in Virginia under RPC 8.5(b)(1).

463.  . The plaintiff has no other plain, speedy, or adequate remedy at law and therefore seeks declaratory judgment under the Uniform Declaratory Judgments Act, chapter 7.24 RCW, declaring that ELC 5.5 is null and void.

**CAUSE OF ACTION #6 -VIOLATION OF THE SIXTH AMENDMENT RIGHT TO COUNSEL AS APPLIED TO THE STATES THROUGH THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

464.  Plaintiff hereby incorporates and re-alleges as if fully set forth herein each and every allegation in paragraphs 1 through 463 as if fully set forth herein.

465.  The acts and omissions of the defendants herein were done under color of state law, custom or usage.

**COMPLAINT - PAGE 85**

466.  Acts of Scannell forced under compulsion of state law are subject to redress in §1983 actions, there being "color of law" within the mean of the statute.

467.  The plaintiff had a federally-protected right, of right to counsel, whose conversations could not be used against him in a criminal proceeding.

468.  ELC 5.4 required, Paul King to turn over attorney client information that had been subpoenaed because he had no right to assert attorney client privilege.

469.  Plaintiff King had a right to assert attorney client privilege if he had been notified of the deposition.

470.  When the defendants required King to divulge attorney client privileged information by refusing to give Scannell notice, it denied Scannell the right to attorney client privilege

471.  By denying Scannell attorney client privilege, the defendants denied him his sixth and fourteenth amendment right to counsel.

472.  The acts and omissions of defendants herein proximately caused the deprivation of the First Amendment rights of the plaintiff, as applied to the states through the Fourteenth Amendment to the United States Constitution.

473.  As a proximate result of the acts and omissions of the defendants and the deprivation of his First and Fourteenth Amendment rights, the plaintiff, has suffered personal injuries as set forth herein-above.

474.  The defendants aforementioned violation of his constitutional rights entitle the plaintiff to declaratory and injunctive relief under 42 USC 1983.

### CAUSE OF ACTION #8  VIOLATION OF THE PLAINTIFF'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

475.  Plaintiff hereby incorporates and re-alleges each and every allegation of paragraphs 1 through 474, as if fully set forth herein.

**COMPLAINT - PAGE 86**

477.  Plaintiff John Scannell has a right, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, to a hearing by an unbiased tribunal before his right to practice law can be taken away.

478.  By making and/or not divulging the ex parte contacts listed above, Danielson, the Disciplinary Board, Defendant Busby, and individual members of the Washington State Supreme Court denied the plaintiff Scannell and King due process of law by not having their cases heard by a disinterested and neutral judges.

479.  By having joint counsel with defendant Busby, the Disciplinary Board violated the constitutional rights of the plaintiff in at least three ways.  First by having joint counsel they violated CJC 3.3 forbidding a judge from having joint counsel with an attorney who appears before them.

480.  Second, by arriving at a joint response with the defendant Busby, they arrived at decisions by either having ex parte contacts, or the appearance of ex parte conducts with an attorney that was appearing before them.

481.  Third, by publicly declaring the petitioner's grievances without merit in law and fact they prejudged a case that was pending before them.

482.  The acts and actions of the defendants herein proximately caused the deprivation of plaintiff's Fourteenth Amendment rights.

483.  As a proximate result of the acts and omissions of the defendants and deprivation of plaintiff's Fourth Amendment rights, plaintiff has suffered personal injuries as set forth hereinabove.

484.  The defendants aforementioned violation of his constitutional rights entitle the plaintiff to declaratory and injunctive relief under 42 USC 1983.

**RICO CAUSES**

**COUNT ONE:**

**COMPLAINT - PAGE 87**

**1. Acquisition and Maintenance of an Interest in and Control of an *Enterprise* Engaged in a *Pattern of Racketeering Activity*: 18 U.S.C. §§ 1961(5), 1962(b)**

486.  Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

487.  At various times and places partially enumerated in Plaintiff's allegations, the RICO defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO *enterprise* of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

488.  During the ten (10) calendar years preceding April 11, 2012 *A.D.*, the RICO did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

489.  Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

**COUNT TWO:**

Conduct and Participation in a RICO Enterprise through a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(c)

490.  Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

493.  At various times and places partially enumerated in Plaintiff's allegations, all Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

**COMPLAINT - PAGE 88**

Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

494.  During the ten (10) calendar years preceding March 1, 2003 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

495.  Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. 1962(c) *supra*.

## COUNT THREE:

## Conspiracy to Engage in a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(d)

496.  Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

497.  At various times and places partially enumerated in Plaintiff's documentary material, all Defendants did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(b) and (d).

498.  At various times and places partially enumerated in Plaintiff's allegations, all Defendants did also conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d).

See also 18 U.S.C. §§ 1961(4), (5) and (9).

**COMPLAINT - PAGE 89**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

499.  During the ten (10) calendar years preceding March 1, 2003 *A.D.*, many Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

500.  Plaintiff further alleges that many Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*).

## SHERMAN ANTITRUST CAUSES OF ACTION

501. In furtherance of antitrust and RICO conspiracies, the defendants, primarily through its their control of the Washington State Bar Association, produces, promotes and uses selection procedures in determining which attorneys get selected for discipline that has the effect of steering the market for attorney services away from solo practitioners, minorities, and toward the services of large firms, prosecutors, defense attorneys and other favored groups.

502. The primary design and effect of the conspiracy is to artificially restrain the pricing of legal services through anticompetitive means that results in the public obtaining unethical legal services at higher costs.

503. Individual defendants have  conspired to ensure that attorneys are left to police themselves, ensuring that the enterprise controls attorney discipline by putting the proverbial fox in charge of the chicken coop.  The defendants as well as other attorneys have conspired to make sure the public is kept in the dark as to their anti-competitive and racially discriminatory policies by adopting a systematic policy of destroying records as well as a secret disciplinary system where it is nearly impossible for the public to discover the scheme of the Enterprise.  The enterprise does this by punish its staff for disclosing records where charges have been dismissed, as well as ignoring the record keeping requirements of Title VII and the Uniform Guidelines on Employee Selection procedures.,

**COMPLAINT - PAGE 90**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

504. In the course of accomplishing this restraint of trade, the defendants have also violated RICO by having conducted, and continuing to conduct, the operation and management of an enterprise, comprised of themselves, the Danielson Jeffers Firm, and the Washington State Bar Association.

**VIOLATION OF SHERMAN ACT SECTION 1 –**

505. The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

506. Through the means alleged above, the individual RICO conspired and, agreed and/or combined with the Danielson Jeffers Firm and the Washington State Bar Association to restrain trade

507. The RICO defendants continue to violate § 1 of the Sherman Act, and has violated it throughout the statute of limitations period, for which the plaintiff is entitled to relief, pursuant to Sections 4 and 16 of the Clayton Act, including declaratory, injunctive and monetary relief, including treble damages, attorney's fees, court costs and other relief deemed appropriate by the Court.

**DAMAGES**

9. As a result of the  actions of the defendant(s) as above alleged, the plaintiff has been damaged in an amount to be proven at trial.

**V. PRAYER FOR RELIEF**

Wherefore the plaintiff prays

That the pleadings conform to the proof at trial;

That all Washington federal judges disqualify themselves from hearing this case because they are all members of the Washington State Bar Association, have formed a close relationship with its leadership and therefore potential defendants in the case.

**COMPLAINT - PAGE 91**

1
2
3
4

That this Court find that all Defendants, both jointly and severally, have acquired and

5

maintained, both directly and indirectly, an interest in and/or control of a RICO enterprise of

6

persons and of other individuals who were associated in fact, all of whom engaged in, and whose

7

activities did affect, interstate and foreign commerce in violation of 18 U.S.C. 1962(b)

8

(Prohibited activities).

9

2. That all Defendants and all their directors, officers, employees, agents, servants and all

10

other persons in active concert or in participation with them, be enjoined temporarily during

11

pendency of this action, and permanently thereafter, from acquiring or maintaining, whether

12

directly or indirectly, any interest in or control of any RICO enterprise of persons, or of other

13

individuals associated in fact, who are engaged in, or whose activities do affect, interstate or

14

foreign commerce.

15

3.  That all Defendants and all of their directors, officers, employees, agents, servants and

16

all other *persons* in active concert or in participation with them, be enjoined temporarily during

17

pendency of this action, and permanently thereafter, from committing any more predicate acts in

18

furtherance of the RICO enterprise alleged in COUNT ONE *supra*.

19

4.  That all Defendants be required to account for all gains, profits, and advantages

20

derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(b) and from

21

all other violation(s) of applicable State and federal law(s).

22

5.  That judgment be entered for Plaintiff and against all Defendants for Plaintiff's actual

23

damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C.

24

1962(b), according to the best available proof.

25

6.  That all Defendants pay to Plaintiff treble (triple) damages, under authority of 18

26

U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C.

27

1962(b), according to the best available proof.

28

**COMPLAINT - PAGE 92**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

7. That all Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. 1962(b), according to the best available proof.

8. That all Defendants pay to Plaintiff His costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees, at a minimum of $300.00 per hour worked (Plaintiff's standard professional rate at start of this action).

9. That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(b) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [*sic*], for the benefit of Plaintiff, His heirs and assigns.

**ON COUNT TWO:**

1. That this Court liberally construe the RICO laws and thereby find that all Defendants have associated with a RICO enterprise of persons and of other individuals who were associated in fact, all of whom did engage in, and whose activities did affect, interstate and foreign commerce in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities). That this Court liberally construe the RICO laws and thereby find that all Defendants have conducted and/or participated, directly or indirectly, in the affairs of said RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§ 1961(5) ("pattern" defined) and 1962(c) supra.

2. That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from associating with any RICO enterprise of persons, or of other individuals associated in fact, who do engage in, or whose activities do affect, interstate and foreign commerce.

**COMPLAINT - PAGE 93**

3. That all Defendants and all of their directors, officers, employees, agents, servants and all other *persons* in active concert or in participation with them, be enjoined *temporarily* during pendency of this action, and permanently thereafter, from conducting or participating, either directly or indirectly, in the conduct of the affairs of any RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§ 1961(5) and 1962(c) *supra*.

4. That all Defendants and all of their directors, officers, employees, agents, servants and all other *persons* in active concert or in participation with them, be enjoined *temporarily* during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in COUNT TWO *supra*.

5. That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering in violation of 18 U.S.C. 1962(c) *supra* and from all other violation(s) of applicable State and federal law(s).

6. That judgment be entered for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(c) *supra*, according to the best available proof.

8. That all Defendants pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(c) *supra*, according to the best available proof.

9. That all Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. 1962(c) *supra*, according to the best available proof.

10. That all Defendants pay to Plaintiff his costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees, at a minimum of $300.00 per hour worked (Plaintiff's standard professional rate at start of this action).

**COMPLAINT - PAGE 94**

11.  That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(c) *supra* and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [*sic*], for the benefit of Plaintiff, His heirs and assigns.

## ON COUNT THREE:

1.  That this Court liberally construe the RICO laws and thereby find that all Defendants have conspired to acquire and maintain an interest in, and/or conspired to acquire and maintain control of, a RICO enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(b) and (d) *supra*.

2.  That this Court liberally construe the RICO laws and thereby find that all Defendants have conspired to conduct and participate in said RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(c) and (d) supra.

3.  That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conspiring to acquire or maintain an interest in, or control of, any RICO enterprise that engages in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(b) and (d) *supra*.

4.  That all Defendants and all their directors, officers, employees, agents, servants and all other *persons* in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conspiring to conduct, participate in, or benefit in any manner from any RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(c) and (d) *supra*.

5.  That all Defendants and all their directors, officers, employees, agents, servants and all other *persons* in active concert or in participation with them, be enjoined *temporarily* during

**COMPLAINT - PAGE 95**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685

pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO *enterprise* alleged in COUNT THREE *supra*.

6. That all defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering in violation of 18 U.S.C. 1962(d) *supra* and from all other violation(s) of applicable State and federal law(s).

7. That judgment be entered for plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(d) *supra*, according to the best available proof.

8. That all defendants pay to plaintiff treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(d) *supra*, according to the best available proof.

9. That all defendants pay to plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. 1962(d) *supra*, according to the best available proof.

10. That all defendants pay to plaintiff his costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement, and all reasonable counsel's fees.

11. That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(d) *supra* and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [*sic*], for the benefit of Plaintiff, His heirs and assigns.

12. That the court award damages to the plaintiff for his denial of his civil rights.

**COMPLAINT - PAGE 96**

13. That the court issue a declaratory judgment that the Washington State Disciplinary as applied is unconstitutional because of the large number of ex parte contacts deprives the plaintiff of his right to a fair and unbiased tribunal.

14. That the court issue a declaratory judgment that Tom Chambers and Mary Fairhurst deprived the plaintiff of his right to be heard by an unbiased tribunal by not disclosing their past association with the Washington State Bar Association.

15. That the court issue a declaratory judgment that Susan Owens and Barbara Madson deprived the plaintiff of his right to be heard by an unbiased tribunal by not disclosing their ex parte contacts as described above.

16. That a declaratory judgment issue that all the members of the Supreme Court deprived the plaintiff of his right to be heard by an unbiased tribunal by not disclosing their ex parte contacts as described above.

17. That a writ of mandamus issue to Carpenter and Carlson that they should process all motions and all appeals according to the rules of appellate procedure and not to file such appeals without notifying the court of the appeal.

18. That Carpenter and Carlson be enjoined refusing to process appeals of decisions from the clerk or the commissioner taken under RAP 17.7.

19. That a writ of prohibition issue to Busby and other members of the Washington State Bar Association or that they should be enjoined temporarily during the pendency of this action and permanently thereafter from conducting ELC 5.5 depositions without notifying all persons whose rights might be affected by the deposition and from subpoenaing documents under such rule without receiving prior permission of a court authorized to issue search warrants..

20. That the Washington State Bar Association's actions be declared in violation of the Sherman anti-trust Act.

**COMPLAINT - PAGE 97**

21.  That the Washington State Bar Association be broken up into several separate organizations and the plaintiff be allowed to form a bar association that can fairly compete with the new bar associations.

22.  That the court issue a declaratory judgment declaring ELC 5.5 as applied by the Washington State Supreme Court, is unconstitutional.

23.  That the court issue an injunction against the defendants from engaging in anti-competitive behavior.

24.  That this court liberally construe the Sherman Anti-trust Act and thereby find that the defendants have participated in anti-competitive behavior whose activities did affect interstate and foreign commerce.

25. Awarding the Plaintiff compensatory damages and consequential damages, trebled as required by law, plus attorneys fees and costs, pursuant to Section 4 of the Clayton Act, 15 U.S.C. §15(a) for the defendants violation of Section 1 of the Sherman Act and such other and additional relief as is just and proper

26.  That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from associating with any association , or of other individuals associated in fact, who do engage in, or whose activities do affect, violate the Sherman antitrust Act and who deny the plaintiff his civil rights and his right to counsel through the use of ELC 5.5.  .

27. That Plaintiff have such other and further relief as this Court deems just, proper, and equitable under the full range of relevant circumstances which have occasioned the instant action.

**COMPLAINT - PAGE 98**

1
2
3
4
**DATED** this 18th day of April, 2012.
5
6
7
8                                            John Scannell,
9                                            Pro Se
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT - PAGE 99**

ActionLaw.net
P.O. Box 3254
Seattle, Wash., 98114
206-624-3685