| JS-6 | UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br><br>CIVIL MINUTES - GENERAL | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |
|---|---|---|

**CASE NO.:** CV 12-00683 SJO    **DATE:** May 20, 2014

**TITLE:** John R. Scannell v. Washington State Bar Association, et al.

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

| Victor Paul Cruz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

**COUNSEL PRESENT FOR PLAINTIFF:**    **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                            Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING WSBA DEFENDANTS' MOTION TO DISMISS** [Docket No. 122]; **DENYING AS MOOT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 138]

This matter comes before the Court on a Motion to Dismiss ("Motion")[1] Plaintiff John Scannell's ("Plaintiff") Third Amended Complaint ("TAC"), filed on April 3, 2014, by Defendants Marcine Anderson, Melinda Anderson, Thomas Andrews, Russell M. Aokii, Michael Bahn, James E. Baker, Ryan Barnes, Stanley A. Bastian, Eron Berg, Board of Governors of the Washington State Bar Association ("WSBA"), Liza E. Burke, Scott Busby, Anthony Butler, William J. Carlson, Thomas Cena, Brian L. Comstock, Felice Congalton, Carrie M. Coppinger, James M. Danielson, Tamara Darst, Lonnie Davis, Eric C. de los Santos, Ellen Conedera Dial, Loren S. Etengoff, Seth Fine, G. Geoffrey Gibbs, Anthony D. Gipe, Grace Greenwich, James V. Handmacher, Lori S. Haskell, Norris Hazelton, David S. Heller, David Heller, Clementine Hollingsworth, Nancy L. Isserlis, Jeffers Danielson Sonn & Aylward, P.S., Mark A. Johnson, Peter Karademos, Leland B. Kerr, Larry Kuznetz, Douglas C. Lawrence, Amanda Elizabeth Lee, Carla C. Lee, Roger A. Leishman, Susan B. Madden, Gail McMonagle, Shea C. Meehan, Joni Montez, Catherine L. Moore, Zachary Mosner, Salvador A. Mungai, Kathleen O'Sullivan, Kristin Olson, Patrick A. Palace, Brian Romas, Julie Shankland, Edward F. Shea Jr., Marc A. Silverman, Henry Stiles, S. Brooke Taylor, Steven G. Toole, Norma L. Urena, Jason T. Vail, WSBA, Robert Weldon, and Brenda Williams (collectively, "WSBA Defendants"). Plaintiff filed a response to the Motion ("Opposition") on April 10, 2014. Also on April 10, 2014, Plaintiff filed a Motion for Summary Judgment in conjunction with its Opposition. On April 21, 2014, the Court suspended all reference to Plaintiff's

---

[1] While the deadline for filing a motion to dismiss has passed (*see* Answer, ECF No. 108), WSBA Defendants challenge the Court's subject matter jurisdiction over Plaintiff's claims (Mot. 3-13). Because, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3), WSBA Defendants' Motion is proper.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

### CIVIL MINUTES - GENERAL

**CASE NO.:** CV 12-00683 SJO          **DATE:** May 20, 2014

Motion for Summary Judgment until the Court made a formal ruling regarding the instant Motion. On April 25, 2014, the WSBA Defendants filed a reply to Plaintiff's Opposition. The Court held a telephonic hearing on the Motion on May 8, 2014. For the following reasons, the Court **GRANTS** the WSBA Defendants' Motion to Dismiss and **DENIES AS MOOT** Plaintiff's Motion for Summary Judgment.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's disciplinary proceedings encompass a long and complicated history that includes review by the Ninth Circuit of various disciplinary rulings and that ultimately resulted in Plaintiff's disbarment from practice in the state of Washington. The Court relies on the facts as summarized by the Ninth Circuit in its Order suspending Plaintiff from the practice of law in this Circuit.[2] Report & Recommendation ("RAR"), *In re Scannell*, No. 10-80024 (9th Cir. July 1, 2011), *adopted in full by* Order, *In re Scannell*, No. 10-80024 (9th Cir. Sept. 2, 2011).

Plaintiff is an attorney formerly licensed to practice law in Washington State ("State"). (TAC ¶ 16, ECF No. 106.) In February 2005, the WSBA began investigating Plaintiff for alleged wrongful actions taken in two separate matters: 1) representing parties with unaligned interests; and 2) allowing an unauthorized attorney to use his name to perform legal work. RAR 2-4, 6-7. In the course of this investigation there was considerable disagreement between Plaintiff and the WSBA relating to the provision of documents, with the result that the WSBA issued several subpoenas for information and requests for depositions with which Plaintiff refused to comply. RAR 4-5, 8-9. Plaintiff challenges the legitimacy of the WSBA's requests for information. (*See generally* TAC.)

As a result of these disagreements, the WSBA filed a formal complaint against Plaintiff on May 30, 2007. RAR 3. Plaintiff filed an answer to this complaint as well as several other motions seeking to move back the date of this hearing and to recuse certain decision-makers based on a prior lawsuit brought against these parties in 2006; these requests were all denied. RAR 10-11. The WSBA Disciplinary Board held a disciplinary hearing for Plaintiff from December 1 to 5, 2008, and based on that hearing recommended a two-year suspension. RAR 11-12. Plaintiff appealed this decision to the WSBA's Board of Governors, which increased the sentence to a complete disbarment on September 1, 2009. RAR 12-13.

Plaintiff appealed the WSBA's decision to the Washington State Supreme Court ("State Court"), but on September 9, 2010, in a 6-3 decision, the State Court upheld the WSBA's decision. RAR 13-14; *see In re Disciplinary Proceeding Against Scannell*, 169 Wash. 2d 723, 741 (2010). After this, the District Court for the Western District of Washington ("WDWA") reciprocally disbarred

---

[2] Following a two-year suspension, Plaintiff's petition for reinstatement to the Ninth Circuit was granted. Order, *In re Scannell*, No. 10-80024 (9th Cir. Sept. 20, 2012).

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CIVIL MINUTES - GENERAL

CASE NO.: **CV 12-00683 SJO**          DATE: **May 20, 2014**

Plaintiff from practice before the WDWA in a decision that was affirmed on an appeal to the Ninth Circuit.  *In re Scannell*, 447 F. App'x 857 (9th Cir. 2011).

Plaintiff filed the present case on April 23, 2012, requesting declaratory and injunctive relief and damages resulting from alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Sherman Anti-Trust Act ("Sherman Act"), and Plaintiff's civil rights under 42 U.S.C. § 1983.  (*See generally* Compl., ECF No. 1.)  Under Plaintiff's original Complaint, Defendants could roughly be split into two groups: those associated with the WSBA's internal decision-making process ("WSBA Defendants") and judicial defendants ("Judicial Defendants"). (Compl. ¶¶ 6-13.)  In a Scheduling Conference held on November 13, 2012, the Court determined that Judicial Defendants should be allowed to file any motions to dismiss before WSBA Defendants.  (Minute Entry for Telephonic Status Conference ("Scheduling Conference") 2, ECF No. 57.)  In accordance with this decision, Judicial Defendants filed a Motion to Dismiss (ECF No. 60), which this Court granted on February 26, 2013 (ECF No. 68).  Plaintiff asked the Court to reconsider this decision, which the Court denied.  (*See* ECF No. 85.)

After the dismissal of Judicial Defendants, the Court held a video status conference on March 25, 2013, in which the Court addressed the sufficiency of Plaintiff's original Complaint.  (*See* Mins. of Video Status Conf., ECF No. 70.)  In that conference, the Court discussed the import of its Order dismissing Judicial Defendants, informed Plaintiff that his Complaint was overly long, and granted Plaintiff permission to amend (and significantly reduce in length) the Complaint.  Plaintiff filed a proposed First Amended Complaint with the Court on March 29, 2013.  (ECF No. 73-1.)  In response, WSBA Defendants filed a motion to dismiss on April 12, 2013.  (ECF No. 80.)  The Court held a hearing on the matter on June 7, 2013, at which time the Court discussed the full range of the parties' legal arguments.  (Mins. of Hr'g on WSBA Mot. to Dismiss, ECF No. 87.)

Following the hearing, the Court dismissed Plaintiff's First Amended Complaint but allowed Plaintiff to file an amended complaint so long as he did not challenge the legitimacy of the State Court's ruling on his particular disciplinary proceeding.  (*See* Order Granting WSBA Defs.' Mot. for J. on Pleadings ("Order Dismissing FAC") 10-11, ECF No. 84.)  As the Court explained on July 1, 2013, "[u]nder the *Rooker-Feldman* doctrine, a federal court cannot assert jurisdiction to exercise appellate review of state court judgments." (Order Dismissing FAC 7.)  The Court went on to say that:

> Here, Plaintiff alleges that WSBA Defendants improperly conspired to deprive Plaintiff of his rights, particularly through the use of ex parte contacts with Judicial Defendants to decide the issue "prior to any hearings or decisions taking place." (FAC ¶¶ 25-29.)  These claims serve as the basis by which Plaintiff challenges the legitimacy of the State Court's actions **in Plaintiff's own case**.  Were this Court to overturn the State Court's ruling based on Plaintiff's allegations, the result would invariably be Plaintiff's reinstatement to WSBA, in direct

> contrast to what the State Court decided.  Plaintiff's suit can therefore only be described as an attempt to change the outcome of those proceedings, which substantively constitutes appellate review of a state court decision in violation of the *Rooker-Feldman* doctrine.

(Order Dismissing FAC 7.)  Thus, the Court found that "*Rooker-Feldman* bars Plaintiff's claims for injunctive relief in his particular case" and dismissed those claims without leave to amend.  Plaintiff was instructed that he "may file a limited amended complaint raising claims generally challenging the WSBA Defendants' promulgation and enforcement of certain rules pertaining to the disciplinary process, particularly focusing on ELC 5.5."[3] (Order Dismissing FAC 13; *see also* Order Dismissing FAC 10-11 ("Plaintiff may file an amended complaint alleging generally that ELC 5.5 is invalid, either as written or as applied by the WSBA Defendants.").)

On July 15, 2013, Plaintiff filed a motion seeking reconsideration of the Order Dismissing the FAC. (ECF No. 98.)  On July 29, 2013, Plaintiff filed a Second Amended Complaint ("SAC") (ECF No. 101); two days later, on July 31, 2013, the Court denied Plaintiff's motion for reconsideration and emphasized that "Plaintiff may only seek injunctive relief preventing the WSBA Defendants from issuing subpoenas or other activities pursuant to ELC 5.5."  (Order Denying Pl.'s Mot. for Reconsideration ("Reconsideration Order") 5, ECF No. 103).  Also on July 31, 2013, the Court *sua sponte* struck Plaintiff's SAC, stating that:

> The Court has already ruled that any attempt, whether straightforward or otherwise, to challenge the legitimacy of Plaintiff's particular disciplinary process is barred by the *Rooker-Feldman* Doctrine.  Plaintiff's allegations that he was denied due process at his own disciplinary hearings are no longer at issue in this case, and therefore cannot constitute a foundation for any form of relief.

(Order Striking Pl.'s SAC with Leave to Amend ("Order Striking SAC") 2, ECF No. 104 (citation omitted).)

On August 15, 2013, Plaintiff filed a Third Amended Complaint ("TAC").  (ECF No. 106.)  In the TAC, Plaintiff challenged the WSBA's methods for conducting investigations in disciplinary proceedings, particularly its use of subpoenas and depositions and its failure to adequately provide attorney-client privilege protections.  (*See generally* TAC.)  For relief, Plaintiff sought:

/ / /

---

[3] WSBA Rules for Enforcement of Lawyer Conduct ("the ELCs") Rule 5.5 ("ELC 5.5") governs investigations in disciplinary proceedings before a formal complaint is filed.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 12-00683 SJO**                              DATE:  **May 20, 2014**

> (1)  A declaratory judgment that ELC 5.5 is unconstitutional as applied by the WSBA under Washington law;
> (2)  An injunction enjoining the WSBA Defendants from conducting ELC 5.5 depositions without notifying parties whose rights might be affected by the depositions and from subpoenaing documents under ELC 5.5 without prior court approval;
> (3)  An injunction barring WSBA Defendants from "taking any disciplinary activity against an attorney who raises in good faith, attorney client privilege during a precharging deposition, until that objection can be reviewed by this court and all subsequent appeals have been exhausted and the attorney is given a reasonable opportunity to come into compliance," and should the attorney come into compliance in that situation, an injunction barring disciplinary action against the attorney for contesting the subpoena;
> (4)  Attorney fees and costs; and
> (5)  Such other relief as the Court deems appropriate.

(TAC ¶¶ 97-100.)

On January 1, 2014, after Plaintiff filed the TAC, a number of amendments to the ELCs went into effect.  (Mot. 4; *see also* Decl. of Douglas Smith in Supp. of Opp'n to Mot. to Am. ("Smith Declaration"), ECF No. 115, Ex. A ("Amended ELCs"), ECF No. 115-1.)  In response to these amendments, Plaintiff filed a motion to amend the TAC because "it would make sense for the court to analyze the case with respect to the new rules because it makes no sense to analyze it under the old rules, when the order would be in effect a few days at most."  (Mot. to Am. TAC, ECF No. 113.)  The Court denied Plaintiff's motion to amend for a number of reasons:  (1) because in the proposed Fourth Amended Complaint, Plaintiff sought individualized relief in violation of the *Rooker-Feldman* doctrine; (2) because Plaintiff lacked standing; and (3) because Plaintiff had unduly delayed in seeking amendment, causing significant prejudice to the WSBA Defendants.  (*See generally* Order Denying Pl.'s Mot. to Am. Compl., ECF No. 113.)  On April 3, 2014, the WSBA Defendants filed the instant Motion seeking to dismiss the TAC as moot and because Plaintiff lacks standing.  (*See generally* Mot.)

II.    DISCUSSION

    A.    <u>Motion to Dismiss</u>

The WSBA Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's TAC for two reasons:  (1) Plaintiff lacks standing to pursue his claims; and (2) the TAC asserts claims that are incurably moot. (Mot. 3.)  Thus, the WSBA Defendants ask the Court to dismiss Plaintiff's

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CIVIL MINUTES - GENERAL

CASE NO.: **CV 12-00683 SJO**　　　　　　　DATE: **May 20, 2014**

TAC without leave to amend. The Court addresses each of the WSBA Defendants' arguments in turn.

  1.  <u>Standing</u>

Article III of the Constitution limits the exercise of judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). For a case to satisfy a federal court's case-or-controversy requirement, Article III, Section 2 requires an "irreducible" minimum of standing. *Id.* at 560. Three elements must be satisfied for a plaintiff to have standing under Article III: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 560-61). Article III standing is a threshold jurisdictional requirement that cannot be waived and can be raised at any time during a suit. *See* Fed. R. Civ. P. 12(h)(1), (3).

"In the particular context of injunctive and declaratory relief, a plaintiff must show that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002) (quoting *Lujan*, 504 U.S. at 560; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The harm must be "actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (quotation marks omitted), but "one does not have to await the consummation of threatened injury to obtain preventive relief." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (citations omitted). In addition to this concrete harm, the plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. "Past deprivation by itself is not enough to demonstrate the likelihood of future deprivations." *Partington v. Gedan*, 961 F.2d 852, 862 (9th Cir. 1992) (citations omitted).

Here, Plaintiff has not shown that he is likely to suffer future harms that are traceable to the WSBA Defendants and the allegedly unconstitutional investigations pleaded in Plaintiff's TAC. Plaintiff does make a number of vague references to threats of future threats of disciplinary action. For example, in the TAC he claims that "the defendants have repeatedly threatened [Plaintiff and] his associates with unconstitutional subpoenas and continue to threaten additional disciplinary actions against [Plaintiff] even though he is already disbarred in Washington courts." (TAC ¶ 19.) However, Plaintiff has provided no particularized, factual allegations to back up these statements.

Instead, Plaintiff claims to have experienced "two events that . . . indicate that he still faces the same hostile treatment from the defendants." (Opp'n 13.) First, Plaintiff claims that a non-party attorney contacted one of his Ninth Circuit clients and told the client that he should fire Plaintiff. (TAC ¶ 65; Opp'n 13-14; Decl. of Michael Chifar Gummo Bear in Opp'n to Mot. ("Bear Declaration"), ECF No. 142, Ex. A, ECF No. 142-1.) The only link the WSBA Defendants have with this incident is that Defendant Felice Congalton and the WSBA declined to discipline the

allegedly misbehaving attorney, thus allegedly "condoning" the attorney's actions. (*See* TAC ¶ 65; Opp'n 14; Bear Decl., Exs. B, C, & D, ECF Nos. 142-2 to 142-4.) Plaintiff does not allege that the WSBA Defendants threatened to open disciplinary proceedings against him, investigate him under ELC 5.5, or issue any subpoenas against him as a result of this event. To the extent that the WSBA's decision not to discipline Plaintiff's opposing counsel harmed Plaintiff, it is entirely unrelated to the allegations Plaintiff makes and the relief he seeks in the TAC.

The next incident that Plaintiff describes is even less connected to the WSBA Defendants and the allegations in the instant lawsuit. Plaintiff claims that Ms. Calhoun, his accountant-paralegal, was subpoenaed over another Ninth Circuit client, and the prosecutor threatened to obtain a warrant to seize documents from her office. (Opp'n 14; Decl. of Judy Calhoun in Opp'n to Mot. ("Calhoun Declaration"), ECF No. 139.) Plaintiff notified the prosecutor that Ms. Calhoun was working in his firm, so many of the sought-after documents were protected by attorney-client privilege. (Opp'n 14; Calhoun Decl. 1-2.) Ms. Calhoun declares that despite this, at the grand jury her attorney and the prosecutor stated that Plaintiff was not an attorney, so the documents were not covered by attorney-client privilege. (Opp'n 14; Calhoun Decl. 1-2.) Eventually, the parties reached a "satisfactory solution." (Opp'n 14-15; *see also* Calhoun Decl. 2.) However, none of the parties described in this incident are defendants to the instant case, and the threatened subpoenas were not issued under the auspices of the ELCs, nor did they involve the WSBA's investigatory powers in any way. Thus, it is difficult to understand the relevance of this incident to the instant case. Nonetheless, Plaintiff theorizes that "it does not take a great leap of faith to realize that the same kind of thing could happen with a different prosecutor, with completely different results, should the prosecutor decide to enlist the aid of the defendants." (Opp'n 14-15.) This speculative conjecture falls far short of demonstrating that Plaintiff is sufficiently likely to be harmed again in a similar way such that he is able to achieve Article III standing.

In his Opposition, Plaintiff also describes a third event where non-party attorneys pressured a client of his to reveal attorney-client information on the grounds that Plaintiff was not an attorney, and then issued a subpoena seeking the documents. (Opp'n 14; *see also* Second Decl. of Pl. in Opp'n to Mot. ("Plaintiff's Declaration") ¶¶ 102-105, ECF No. 141.) The judge quashed the subpoena because the discovery cutoff prevented further discovery. (Opp'n 14; Pl.'s Decl. ¶ 105 & Ex. 5, ECF No. 141-5.) Plaintiff again hypothesizes that the non-party attorneys involved in the incident could "visit the defendants, where they have all too willing accomplices . . . to aid them in their unethical demands." (Opp'n 14.) As with all of the allegations Plaintiff makes to support his claim that he is threatened by the WSBA Defendants with harm, this is entirely disconnected from the WSBA Defendants, the ELCs, the WSBA's allegedly unconstitutional investigatory methods in the disciplinary process, and the relief Plaintiff seeks in the TAC.

Based on these allegations, it is difficult for the Court to see that there is any risk that the WSBA Defendants will open an allegedly unconstitutional investigation into Plaintiff's activities. Furthermore, it seems even less likely that this investigation, were it to occur, would proceed under the former versions of the ELCs described in the TAC, when these rules have since been

superseded by the amended versions. For these reasons, the Court finds that Plaintiff lacks standing to proceed with this lawsuit.

    2.    <u>Mootness</u>

Even if Plaintiff were to have standing, however, the Court must dismiss the TAC as incurably moot. Article III, Section 2, Clause 1 of the United States Constitution limits the judicial power of the United States to the resolution of "Cases" or "Controversies." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). For a case or controversy to exist, the issue presented in the case must not be moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (alteration in original) (internal quotation marks omitted). This is because "the duty of [federal courts] is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue . . . ." *Local No. 8-6, Oil, Chem. and Atomic Workers Int'l Union, AFL-CIO v. Missouri*, 361 U.S. 363, 367 (1960). "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997). Moreover, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

"Where intervening legislation has settled a controversy involving only injunctive or declaratory relief, the controversy has become moot." *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 875 (9th Cir. 2006) (quoting *Bunker Ltd. P'ship v. United States*, 820 F.2d 308, 311 (9th Cir. 1987)). The test for determining whether intervening legislation has settled a controversy of this sort is "whether the new law is sufficiently similar to the repealed law that it is permissible to say that the government's challenged conduct continues." *Id.* (internal alterations omitted) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993)). Thus, courts deem the controversy settled if the new law has been "sufficiently altered so as to present a substantially different controversy," such that there is "no basis for concluding that the challenged conduct is being repeated." *Id.* (internal alterations omitted) (quoting *City of Jacksonville*, 508 U.S. at 662 n.3). In determining whether the controversy is settled, "the case or controversy giving rise to jurisdiction is the touchstone." *Id.*

/ / /

/ / /

    a.    <u>Plaintiff's TAC is Moot</u>

CASE NO.: CV 12-00683 SJO                          DATE: May 20, 2014

Here, the WSBA Defendants argue that in the TAC, Plaintiff seeks only declaratory and injunctive relief[4] related to the version of ELC 5.5 in place before significant amendments to the rule went into effect on January 1, 2014, so any relief that this Court could grant is moot. It is without doubt that the TAC is largely focused on the prior version of ELC 5.5, a fact that Plaintiff concedes. (*See* TAC ¶¶ 29, 89; *see also* Opp'n 10-11.) For example, much of the relief Plaintiff seeks in the TAC is directly tied to ELC 5.5, including a declaration that ELC 5.5 as applied by the WSBA is unconstitutional (TAC ¶ 97), and an injunction preventing the WSBA from conducting depositions under ELC 5.5 without notice to the affected party or issuing subpoenas under ELC 5.5 without prior court approval (TAC ¶ 98). Furthermore, in allowing Plaintiff to amend his complaint in compliance with the *Rooker-Feldman* doctrine, this Court limited Plaintiff to generalized allegations concerning ELC 5.5. (*See, e.g.*, Order Dismissing FAC 10-11 ("Plaintiff may file an amended complaint alleging generally that ELC 5.5 is invalid, either as written or as applied by the WSBA Defendants."); Reconsideration Order 5 ("Plaintiff may only seek injunctive relief preventing the WSBA Defendants from issuing subpoenas or other activities pursuant to ELC 5.5."); Order Striking SAC 2 ("[T]he Court . . . granted Plaintiff the opportunity to file an amended complaint raising only his general challenge to ELC 5.5.").)

Nonetheless, Plaintiff argues that because not all of the relief he seeks "rel[ies] on the specific language of ELC 5.5," but rather concerns "the attorney client privilege issue of which ELC 5.5 is only a side issue," it is not moot. (Opp'n 10-11.) In particular, Plaintiff points to ¶ 99 of the TAC. Because ¶ 99 does not directly and expressly implicate ELC 5.5, Plaintiff argues that the Court retains subject matter jurisdiction over it, notwithstanding the potential mootness of Plaintiff's allegations that are more directly tied to the pre-amendment version of ELC 5.5.

However, Plaintiff's argument understates the importance of ELC 5.5 to **all** of the relief he seeks, including the injunction described in ¶ 99 of the TAC. The test to determine if intervening legislation has settled Plaintiff's controversy is not whether the pre-amendment version of the law is directly referenced in the relief, but "whether the new law is sufficiently similar to the repealed law that **it is permissible to say that the government's challenged conduct continues**." *Helliker*, 463 F.3d at 875 (quotation omitted) (emphasis added). Here, an examination of the changes to the ELCs shows that the WSBA's challenged conduct has changed such that the case "present[s] a substantially different controversy" from that outlined in the TAC, including the conduct referenced in ¶ 99. *See id.* (quotation omitted).

---

[4] While Plaintiff also seeks "costs and attorneys fees as allowed by law" and "such other and further relief as this Court deems just, proper, and equitable" (TAC ¶¶ 99-100), Plaintiff does not and cannot base these claims for damages on the past deprivation of his constitutional rights. A "request for costs and attorney's fees is not sufficient to keep [a] case alive," if otherwise mooted. *T.W. v. Spokane Cnty.*, 385 F. App'x 706, 708 (9th Cir. 2010) (unpublished). Similarly, the court may not "read[] a claim for damages into a catchall prayer for relief in order to avoid a finding of mootness." *Id.*

JS-6

Case 2:12-cv-00683-SJO   Document 152   Filed 05/20/14   Page 10 of 13

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 12-00683 SJO</u>                    DATE: <u>May 20, 2014</u>

In ¶ 99 of the TAC, Plaintiff seeks an injunction barring the WSBA Defendants from "taking any disciplinary activity against an attorney who raises in good faith, attorney client privilege during a precharging deposition, until that objection can be reviewed by this court and all subsequent appeals have been exhausted and the attorney is given a reasonable opportunity to come into compliance. Should the attorney come into compliance in that situation, the defendants . . . would be enjoined from recommending any disciplinary action against the attorney for contesting the subpoena." (TAC ¶ 99.) That is, with this injunction Plaintiff seeks to enjoin the WSBA Defendants from taking disciplinary action against an attorney with a pending good faith objection to an ELC 5.5 subpoena on attorney-client privilege grounds, even if that objection is denied, so long as the attorney comes into compliance. That the pre-amendment ELCs did not directly address this issue drove Plaintiff's lawsuit. Today, however, this scenario is largely addressed by the Amended ELCs. Under the new rules, the WSBA cannot take disciplinary action against an attorney with a pending good faith objection to an investigatory subpoena. *See* Amended ELC 5.5(e)(2) ("A timely objection suspends any duty to respond as to the subpoena until a ruling has been made"); Amended ELC 7.2(a)(3) ("When any lawyer fails without good cause to comply with [an investigatory subpoena or request for information], disciplinary counsel may petition the Court for an order suspending the lawyer pending compliance . . . . A petition may not be filed if the request or subpoena is the subject of a timely objection under [ELC] 5.5(e) and the hearing officer has not yet ruled on that objection."). It follows that the WSBA may not discipline an attorney for making a good faith objection to the subpoenas as allowed by the ELCs. Thus, the Court cannot say that the WSBA Defendants' challenged conduct continues, as the new rules expressly forbid this conduct.[5] Thus, the intervening amendments to the ELCs have mooted the entirety of

---

[5] Small differences remain between the injunction sought by Plaintiff and the rules laid out in the Amended ELCs. For example, Plaintiff seeks to have this Court, and not the WSBA, rule on all good faith, attorney-client privilege objections to ELC 5.5 subpoenas in Washington state disciplinary proceedings. (*Compare* TAC ¶ 99, *with* Amended ELC Rule 5.6 (authorizing the chief hearing officer to hear attorney-client privilege objections to investigatory subpoenas), *and* Amended ELC Rule 10.9 (granting review of this decision to the WSBA Disciplinary Board).) Plaintiff also seeks to suspend any duty to respond to an investigatory subpoena until all appeals are exhausted, while the new rules require compliance after the hearing officer has made a decision. (*Compare* TAC ¶ 99, *with* Amended ELC Rule 7.2(a)(3).) However, this Court is not in a position to rule on all potential attorney-client privilege challenges, particularly now that these challenges are explicitly allowed under and governed by the amended ELCs. Moreover, the new amendments have changed the challenged conduct sufficiently so, were this case to go forward, it would "present a substantially different controversy" from that presented in the TAC, even though some small differences remain between the relief sought by Plaintiff and the WSBA Defendants' newly mandated behavior. *See Helliker*, 463 F.3d at 875 (quotation omitted).

**CASE NO.:** <u>CV 12-00683 SJO</u>          **DATE:** <u>May 20, 2014</u>

Plaintiff's TAC, not merely those portions of the TAC that expressly reference ELC 5.5, including ¶ 99 of the TAC, which Plaintiff argues does not implicate the new rules.

Even if this case is moot, however, Plaintiff argues that it should nonetheless go forward because "[t]he defendants have already demonstrated they are willing to treat the plaintiff unfairly," suggesting that they will so again in the future. (Opp'n 11). For example, Plaintiff claims that "[i]t is entirely possible that [Plaintiff] could raise an attorney client privilege [sic] in good faith and have the Supreme Court ultimately rule against him" and that "[t]here is nothing to prevent the bar to do again [sic] what they did in the past, find him guilty, subject him to expensive and time consuming hearings and unanimously vote to disbar him again . . . just by making a finding of fact that his raising of the issue was in bad faith." (Opp'n 11.) The Court may not go forward merely on the basis of a theoretical possibility that the WSBA Defendants will act in bad faith under the new rules. *See Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994) ("[Plaintiff] fears only the possibility that the state's allegedly discriminatory policy will manifest itself under the new statute. Federal courts are not authorized to address such theoretical possibilities."). Furthermore, the new conduct that Plaintiff hypothesizes presents a substantially different controversy than that described in the TAC. The harms imagined by Plaintiff in this parade of horribles are individualized, and not the generalized grievances allowed under *Rooker-Feldman* in the TAC.[6] Additionally, the WSBA Defendants would be acting under different rules that explicitly prevent much of their theoretical behavior. Finally, even were the Court to proceed on the operative complaint, it would be unable to offer Plaintiff any "effective relief," *Am. Rivers*, 126 F.3d at 1123, because, as discussed, all of Plaintiff's requested relief concerns laws that are no longer in existence.

          b.       <u>Exceptions to the Mootness Doctrine</u>

Plaintiff also argues that two exceptions to the mootness doctrine apply: (1) Plaintiff's injury is capable of repetition, yet would evade review (Opp'n 11-12), and (2) the new rules constitute only a "voluntary cessation" to the WSBA Defendants' previously unconstitutional actions (Opp'n 12). For both of these exceptions, Plaintiff claims that the conduct that could be repeated "has nothing to do with [the] ELC[s] specifically" but rather "has to do with violating [P]laintiff's right to practice law by taking away his right to attorney client privilege." (Opp'n 11-12.) However, as discussed already, the newly-amended ELCs directly address Plaintiff's attorney-client privilege concerns, insofar as they were raised in the TAC.

---

[6] The Court notes that, as has been explained multiple times, to the extent Plaintiff attempts to raise an individual rather than general challenge to the WSBA Defendants' promulgation of rules related to attorney-client privilege, such an attempt is barred by the *Rooker-Feldman* doctrine.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 12-00683 SJO**                    DATE:  **May 20, 2014**

Moreover, Plaintiff's injury is not "capable of repetition, yet evading review," nor has the Washington Supreme Court's amendment of the ELCs constituted "voluntary cessation."  The "capable of repetition, yet evading review" exception applies where:  "(1) [t]he challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subject to the same action again."  *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985); *see also Roe v. Wade*, 410 U.S. 113, 125 (1973) (explaining that since pregnancy is so short that it will likely come to term before the usual appellate process is complete, it provides a perfect example of this exception because it "truly could be capable of repetition yet evading review").  This doctrine "applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."  *Lyons*, 461 U.S. at 109.

Here, Plaintiff's argument fails for two reasons.  First, the process of amending the ELCs took place over five years from start to finish (*see* Smith Decl., Ex. B, ECF No. 115-2), so Plaintiff's injury differs from pregnancy in that it is not inherently of the type that would likely always become moot before review.  *See Blatchford*, 38 F.3d at 1510 ("[The plaintiff] has failed to show that this is the type of injury which is of such inherently limited duration that it is likely always to become moot prior to review.  It took the Alaska legislature four years to repeal the statute in question, and during all of those four years the Commissioner's regulations remained intact.").  Second, Plaintiff has not made a "reasonable showing that he will again be subjected to the alleged illegality."  *Lyons*, 461 U.S. at 109.  Rather, Plaintiff theorizes that "[i]t is entirely possible" that he could face similar injuries in the future, and notes that "[t]here is nothing in the language of the new rules that would prevent [the WSBA Defendants] from doing exactly what they did in the past."  (Opp'n 12.)  For the Court to apply this exception, Plaintiff must show more than a speculative possibility that he will again suffer the same injury.  As has been already discussed in the standing analysis, Plaintiff has failed to show that it is likely, not merely theoretically possible, for Plaintiff to suffer the injuries he describes in the TAC in the future.

Similarly, the "voluntary cessation" exception does not apply here.  In an effort to deprive a court of jurisdiction, a defendant might try to moot a case by ceasing the allegedly wrongful conduct.  Courts recognize, however, that permitting a defendant to moot a case in such a way would leave him "free to return to his old ways."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted).  "A statutory change, however, is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed."  *Blatchford*, 38 F.3d at 1510.  "The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted."  *Id.* (citations omitted).

In this case, it was the State Court, and not the WSBA Defendants, that finalized the Amended ELCs, so it cannot be said that the WSBA Defendants voluntary ceased their conduct.  Furthermore, the amendment process began in 2008 and the proposed amendments were first unveiled in 2011, long before this lawsuit was initiated.  (Smith Decl., Ex. B, at 2.)  Thus, the

amendment could not "have originated from a desire to terminate [this] lawsuit." *Blatchford*, 38 F.3d at 1511.

For these reasons, the Court holds that the Amended ELCs render Plaintiff's TAC moot. Moreover, the Court has already denied Plaintiff's motion to amend the TAC because in his proposed Fourth Amended Complaint, Plaintiff sought to evade this Court's past orders barring individualized relief under the *Rooker-Feldman* doctrine, lacked standing, and had unduly delayed in seeking the amendment so that the WSBA Defendants would have been significantly prejudiced in having to defend against the proposed complaint. The Court cannot imagine that giving Plaintiff the opportunity to amend his complaint again would lead to a different result. Thus, the Court **dismisses** Plaintiff's TAC **without leave to amend**.

  B. Motion for Summary Judgment

Because the Court has dismissed Plaintiff's TAC without leave to amend, Plaintiff's Motion for Summary Judgment is moot. The Court thus **DENIES** Plaintiff's Motion for Summary Judgment.

III. RULING

For the foregoing reasons, the Court **GRANTS** the WSBA Defendants' Motion to Dismiss and **DISMISSES without leave to amend** Plaintiff's Third Amended Complaint. The Court **DENIES as moot** Plaintiff's Motion for Summary Judgment. This action shall close.

IT IS SO ORDERED.